FRANK W. MISH ᴇᴛ ᴀʟ. *v.* D. PHILLIP
SCHINDEL, Aᴅᴍɪɴɪsᴛʀᴀᴛᴏʀ.
[No. 56, October Term, 1932.]

*Decided February 1st, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Daniel W. Doub* and *Joseph D. Mish,* for the appellants.

*Ellsworth R. Roulette,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

·In the case of *Schindel v. Danzer* and others, reported in 161 Md. 384, 157 A. 283, the administrator of Dr. Schindel, one of a group of obligors on paper of two insolvent corporations, who had combined with some of the creditors to effectuate a settlement by means of the resources available to the obligors, was, after having settled his own particular obligations in full by paying out more than he had agreed to contribute, denied a right to contribution by fellow obligors, or indorsers; and in this case he has sued a committee appointed by the obligors and creditors to carry their plan through and recovered a judgment at law for the amount of his excess contribution. The suit was, by agreement, tried before the court without a jury, upon the testimony taken in the previous case. The committee appeals.

The full statement of facts given in the previous case dispenses with any elaborate recital in this one. The total indebtedness of the two corporations on their notes was much · in excess of the resources of those who had added their signatures as obligors in some form, makers, indorsers, or guarantors, and it was feared that, if the banks and others holding the notes should insist upon full payment, many bankruptcies might result and serve to reduce the total resources still further, and, of course, increase the burdens on those obligors able to pay. Nine banks and two individual creditors thereupon combined with the obligors to work out a settlement of all the notes upon the best terms possible, by means of such resources as the obligors could collect, from themselves, their relatives and friends. For this purpose a committee was formed of Mr. Mish, Major Lane, and Mr. Cushwa, since deceased, and it was agreed that, by means of cash and notes with which the committee was to be provided by the obligors,

creditors who did not join in the agreement should be paid on the best terms the committee could persuade them to accept, and the remaining funds should be disbursed *pro rata* among the co-operating banks and creditors. Eventually only four creditors received payment in full, two banks in Pennsylvania, and the Nicodemus National Bank and the Maryland Surety & Trust Company, both of Hagerstown, where the obligors resided. And it was on the four notes of these creditors that Dr. Schindel was indorser, and he himself paid the notes in full after the committee as agents had been placed in charge of the undertaking of the co-operating banks and obligors. In doing this Dr. Schindel had to pay out $2,642.43 over and above $8,000 which he had undertaken to contribute toward the joint plan. And it is for this excess of $2,642.43 that he has recovered his judgment against the surviving members of the committee, the judgment appealed from.

Dr. Schindel's action in his own behalf was due to a fear that the slower methods of the committee would work to his detriment. He asked and obtained from the committee their approval of his paying the Pennsylvania banks, which, it is agreed, had to be paid in full, and obtained the committee's agreement that the amount paid should be credited on his pledged contribution to the undertaking. This assent was contained in the letter quoted on page 394 of 161 Maryland, 157 A. 283, 287. It included an approval of payment of the note held by the Nicodemus National Bank, but this was a mistake, and the approval was recalled before action had been taken on it. There is some difference in the testimony of Dr. Schindel and the members of the committee on conversations concerning his payment of the two Maryland notes, but Dr. Schindel's own testimony seems sufficient to remove from the case any question of authority from the committee to him to make those payments. Asked specifically about payment of the note of the Nicodemus National Bank, he answered, "No, I don't think I had any authority to pay it." Asked whether the committee at any time authorized him to make payment of the note of the Maryland Surety & Trust

Company, he said, "No." And asked whether in paying it he was acting in any way on behalf of the bank committee, he said he was not, that in paying all four notes on which he was bound he acted on the advice of Robert McCauley and E. J. Smead; that it was because of their advice that he collected the money and paid the notes, and not because of any arrangement he had with the bank committee. He was asked whether Major Lane, of the committee—who was a member of the executive committee of the Maryland Surety & Trust Company, and its attorney—did not tell him that if he paid the note of the company, the company would be bound to accept the money, but the payment would put Major Lane in a very embarrassing position, and whether Major Lane did not tell him to hold off. Dr. Schindel answered that there was an argument, but Major Lane finally said go ahead and pay it. In this latter statement, Major Lane could not, as we read the testimony, be regarded as having authorized or approved the full payment by Dr. Schindel for the committee; on the contrary, it is evident that he merely attempted to prevent it, and then finally abandoned the effort. That is the only construction consistent with the definite statement of Dr. Schindel himself that the committee did not authorize him to pay that particular note. We take it as established, therefore, that the committee delegated to him no authority to pay the two Maryland notes on their behalf. Assignments were taken by Dr. Schindel of all four notes paid by him. Officers of the Maryland holders, called as witnesses by the plaintiff, testified that they would not have accepted less than the full amounts of the debts in settlement; the members of the committee, on the other hand, were, according to their testimony, hopeful of settling at reduced figures, as was done with the other creditors.

Two grounds are relied on for recovery from the committee of Dr. Schindel's excess payment. It is urged that as assignee and holder of the notes Dr. Schindel stands in the position of the assignor creditors, with the same rights to enforcement of the debts. But merely as assignee of the notes there could be no claim against the committee, for they were

not makers, indorsers, or guarantors; they were mere agents of their joint principals. We are not now concerned with rights against makers, indorsers, or guarantors, and in the previous case it was determined that Dr. Schindel had no rights of contribution from his fellow obligors. And he could not, merely because he is holder of the notes, enforce payment from the agents, even though money for payment was placed at their disposal, because agents in that situation are accountable only to their principals. 1 *Mechem, Agency,* secs. 1447 and 1449; *Amer. Law Inst. Restatement Agency,* sec. 565; note, 5 *L. R. A.* 431. There is no evidence of a superadded agreement of the committee to make full payment to Dr. Schindel, or to reimburse him for his excess payment, except such as there may have been in the understanding that amounts paid to settle the two notes held in Pennsylvania should be credited on amounts pledged.

If Dr. Schindel be considered, not as assignee, and third party to the agents' undertaking, but as a party to an agreement imposing on them duties to pay, this court is still unable to agree in the view that the committee may be held liable for the excess payment. In the previous case there was a dispute as to Dr. Schindel's entering finally into an agreement looking to payment of his obligations, and the finding of fact was that he was a party to the general agreement. Whatever his intention in respect to the agreement may have been, it remains that in the present case he is suing the committee which was the product of that agreement, and which had no office or obligation other than the carrying out of the purposes of the principals in that agreement. And the contention of the plaintiff, viewed as such party, is, as we understand it, that upon his contributing or promising the sum required of him the committee became obliged to settle the notes on which his name appeared, and thus to secure his release from his liabilities, whatever the cost, that the plaintiff was compelled to pay $2,642.43 more to secure that settlement and release than he had agreed to contribute, and that, because of these facts, he is entitled to look to the committee for the excess amount so paid. The suit is against the mem-

bers of the committee personally, and a judgment for the plaintiff would render them and their property personally responsible, yet there was no intention under their agreement that they should use money of their own, for the settlement of Dr. Schindel's obligations. They received no consideration for any such undertaking, no compensation at all. In any event, we do not see the legal ground for recovery against them personally. The claim is that they should have made a different division and allotted to Dr. Schindel the money now claimed instead of leaving it in the balance at the disposal of the co-operating creditors, but, by reason of Dr. Schindel's taking over the settlement into his own hands, the committee were left no opportunity to make any division at all, so far as his obligations were concerned. He retired the committee from performance of the functions cast upon them, withdrawing from their hands not only the mere making of payment, but also the making of the effort which was the chief purpose of their appointment, and to which the interests of the co-operating creditors was committed; the effort, that is, to persuade other creditors to co-operate by accepting with those co-operating. That effort may have been found futile, but it was important to the co-operating creditors that it be made, notwithstanding any resolution of officials of the other creditor banks that no reduction should be accepted. As has been stated, one of the committee was a member of the executive committee and attorney of the Maryland Surety & Trust Company, which Dr. Schindel paid in full against the wish of that gentleman, and that fact seems to show that deprivation of the services of the committee in overcoming the reluctance of creditor officials might be a material defeat of the purpose in the appointment of the committee.

We come to the conclusion that, for the reasons stated, a prayer of the defendants, now appellants, that a verdict be rendered in their favor as matter of law, should have been granted.

*Judgment reversed without a new trial, with costs.*

ADKINS, DIGGES, and PARKE, JJ., dissent.