RICHARD MILLER *v.* JAMES McGRAW CO., ET AL.

[No. 17, January Term, 1945.]

530

*Decided April 11, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Paul Berman* and *Eugene A. Alexander, III*, with whom was *Theodore B. Berman* on the brief, for the appellant.

*William D. MacMillan*, with whom was *Semmes, Bowen & Semmes* on the brief, for the appellees.

MELVIN, J., delivered the opinion of the Court.

On March 3, 1944, the State Industrial Accident Commission awarded the appellant, Richard Miller, compensation at the rate of twenty dollars per week, payable weekly, not to exceed six thousand dollars, for "permanent total disability" resulting from an accidental injury arising out of, and in the course of, his employment by James McGraw Company, one of the appellees. On the employer's-insurer's appeal to the Superior Court of Baltimore City, the case was submitted to a jury on the three following issues: (1) Is the claimant permanently totally disabled as the result of accidental injury sustained on December 19, 1942? (2) If the answer to issue No. 1 is "No," then is the claimant permanently partially disabled as the result of an accidental personal injury sustained on December 19, 1942? (3) If the answer to issue No. 2 is "Yes," then what percentage of maximum permanent partial disability has the claimant suffered as the result of an accidental injury sustained on December 19, 1942?

The jury's answers to these issues were: As to No. 1, "No"; as to No. 2, "Yes"; as to No. 3, "25%,"—thereby reversing the decision of the State Industrial Accident Commission. It is from the judgment on this verdict that the present appeal arises.

That the claimant's injuries are permanent is not disputed now, the only point being whether this permanent disability is "total," as found by the Commission, or "partial," as found by the jury. The first order passed by the Commission was on January 16, 1943, and was on the basis of temporary total disability. This was followed by an order of March 2, 1943, directing that payments of compensation cease as of January 26, 1943. On May 14, 1943, the Commission passed another order rescinding the one of March 2nd and affirming the original order of January 16, "subject to a credit for days claimant worked and received wages during temporary total disability, if any, and subject to further consideration when the nature and extent of the permanent partial disability, if any, can be determined." This last mentioned action of the Commission was taken as a result of the claimant's appeal to the Baltimore City Court, where the case was heard by the court sitting as judge and jury, and where the following issues and answers thereto were agreed upon by counsel for both sides, namely: (1) Was the claimant temporarily totally disabled as of January 26, 1943? Answer: "Yes"; (2) Is the claimant still temporarily totally disabled? Answer: "Yes"; (3) Can it now be determined whether the claimant has any permanent partial disability? Answer: "No."

It is significant that by this order of May 14, 1943, the only question left open for future determination was that relating to the claimant's "permanent partial disability, if any." It was settled by the answers to issues one and two, agreed to by counsel, that the total disability was temporary. This point will be hereinafter referred to in connection with the claimant's special exception to the employer's-insurer's 2—A prayer.

After the passage of this order, the claimant returned to his home in South Carolina, his case being subject to review when called for in due course to determine the one open issue, as stipulated. In the meantime his compensation of twenty dollars a week was continuing, on the assumption that he was still temporarily totally disabled. The character of his injuries, hereinafter specified, was such that he had been unable up to that time to work at his former occupation as a ditch-digger or farm hand, and the question was to find out what progress, if any, toward recovery he would make in his home environment. The employer-insurer kept an eye on him during the summer and early autumn of 1943 found that he had been doing then some work at ditch-digging, and had been otherwise active, and on November 3rd of that year had the claimant examined at the Orthopedic Clinic, Columbia, South Carolina. As the result of that examination the appellee, as of November 15, 1943, stopped claimant's compensation. On February 3, 1944, at the latter's request, a hearing was held in the office of the State Industrial Accident Commission to determine the "nature and extent of disability." This was the hearing at which the Commission finally decided that the claimant was "permanently totally disabled," from which decision the appeal to the Superior Court of Baltimore City was taken, resulting in the jury's finding of permanent partial disability.

The claimant's injuries are fully and expertly described by the three competent specialists who testified in the case—Dr. Allen F. Voshell and Dr. Austin T. Moore, on behalf of the appellees, and Dr. Robert W. Johnson, Jr., on behalf of the appellant. All of them examined the injured man, after obtaining from him a history of his case, and came to substantially the same conclusion, namely, that his injuries were partial in character, but permanent in quality, which is the statute's definition of "Permanent Partial Disability." Their only difference of opinion was as to the extent or percentage of this disability. This point relates specifically to Issue No. 3

submitted to the jury, and is the one which presents the most serious difficulty on this appeal.

A summary of the doctors' findings of the undisputed facts shows that the claimant was injured on December 19, 1942, while working as a laborer for the James Mc-Graw Company near Baltimore City when a truck on which he was riding partially overturned, throwing him against the side or tail gate of the truck which hit him across the back about hip level, wrenching his back and also seriously affecting his left thigh and leg. He was helped out of the truck, managed to get home and, after consulting several doctors during the course of the next few weeks, presumably at the instance of the appellees, underwent an operation at the Johns Hopkins Hospital on March 3, 1943. By this operation two inter-vertebral ruptured discs, which were protruding and pressing on a nerve, were removed and the patient was returned to the ward "in good condition." The post-operative developments were uneventful, and he was discharged from the hospital on March 17, 1943.

The first examination of the claimant by the three experts in the pending case was by Dr. Voshell on April 20, 1943, the next was by Dr. Austin T. Moore of the Orthopedic Clinic at Columbia, South Carolina, on November 3, 1943, and, in sequence, by Dr. Voshell on January 20, 1944, by Dr. Johnson on January 30, 1944, and again by Dr. Voshell on June 10, 1944. This last examination was subsequent to the final decision of the State Industrial Accident Commission, which was on March 3rd, and on that ground was made the subject of an exception by the claimant to the admissibility on appeal of testimony concerning it.

As the net result of all of these examinations the opinions given by the three experts as to the percentage of the claimant's physical disability are to be thus classified, according to the record before us: Dr. Voshell— ten per cent. of "permanent total disability"; Dr. Moore— twenty-five per cent. "permanent partial general disability"; Dr. Johnson—"approximately fifty per cent. wholly

physical," which opinion he supplemented by saying: "My percentage of permanent total disability was based on his physical lesion plus his sense of the back not being reliable for usage, and it was eighty per cent." Dr. Johnson, in other words, added thirty per cent. because of the psychological aspect of the patient. As to this his observation is enlightening. He testified: "I felt that he had sustained a physical injury of considerable moment; that it had been to a partial extent relieved by the operation, but that he had an underlying physical condition, and had on top of that acquired a considerable apprehensive protective reaction, which, to a man of his age who had a physical disability, who works with his back, and if he has had backache long enough, it is awfully hard to get him to go back to work."

On this same point, and to the contrary, Dr. Moore testified that: "This man suffered what seems to be a relatively slight injury to his left leg and back about ten months ago. However, it apparently was of sufficient severity to cause a hernia of the nucleus pulposus of the fourth and fifth lumbar interspaces. The history as given above by the patient is very uncertain because this man simply does not know when, by whom, or for what he was treated. It is assumed that at the time of operation the cause of his difficulty was located and removed. Normally in private work one would expect a more rapid convalescence than has occurred in this case. This long convalescence may be influenced by the fact that he is at present receiving twenty dollars a week compensation and has no desire to return to the type of work in which he was employed at the time of his accident. In fact, he states that he would rather work locally for two dollars a day than return to his previous work at any salary."

The sum and substance of this expert testimony is to present on this record the case of an injured workman, coming within the provisions of the statute, who is unquestionably entitled to compensation on the basis of permanency of injuries but whose recovery of award is

governed by the jury's determination of "what percentage of maximum permanent partial disability" is applicable. That is the way the case stood when it was submitted to the jury with Issue No. 3 included, but that issue was so inartificially drawn that it was open to misinterpretation. What was meant by the use of the word "maximum" in connection with "partial" disability? In reason, it could have but one of two meanings as applied to this case.

If, first, it had reference to the maximum amount of money named in the statute under the caption "Permanent Partial Disability," Code, 1943 Supp., Art. 101, Sec. 48, Subsec. 3, namely, $3,816, the issue would be plainly defective, for it is no part of the function or prerogative of a jury in a case arising under the Workmen's Compensation Act to figure or consider amounts of money awards in reaching their verdict. *Schiller v. Baltimore & O. R. Co.*, 137 Md. 235, 242, 112 A. 272. They may go no further than answer the particular issues submitted to them, and must leave to the State Industrial Accident Commission the business of computing the amount of compensation to be paid the claimant.

The alternative meaning to be ascribed to the word "maximum," as used in the issue, is that it relates to a percentage of total disability. Taken literally, the words used, "a percentage of maximum permanent partial disability," do not relate to total disability and there is considerable doubt as to just what they do mean. No issue is sound which is not clearly and unequivocally expressed, and which is not susceptible of an answer leading to the final determination of the case on a basis recognized by the statute. *Bethlehem Steel Co. v. De Mario*, 164 Md. 272, 164 A. 748; *McCulloh & Co. v. Restivo*, 152 Md. 60, 136 A. 54. Issue No. 3, therefore, is objectionable because of its ambiguity, and the submission of it to the jury would be meaningless were it not for the fact that a consideration of the whole case conclusively shows that throughout the proceedings there was general agreement as to the meaning of the words

actually used. All of the testimony on this point—that of the three medical experts—relates to a percentage of permanent total disability, and it is reasonable to assume that when the jury answered "25%" to the question propounded by the third issue, they intended this to mean 25 per cent. of permanent total disability in accordance with this testimony.

The case having been tried on that interpretation, which would obviously be more favorable to the appellant than the other, the error in submitting the issue was not prejudicial to him, and will not be held reversible under the facts and circumstances here shown.

The reasons for this conclusion are strengthened by the fact that the claimant (appellant) failed to make any objection to this issue, or to indicate any non-concurrence in it, until the taking of testimony had been concluded and the trial had reached its last stage. Then, for the first time, according to the record, he raised the point and did so through a prayer asking the court not to submit the third issue to the jury, "because any answer to said issue will be indefinite, inconclusive, and will not go to the ultimate determination of the case." To the court's refusal of this prayer an exception was reserved, and it is argued that this ruling is now before us for review under Trials Rule 7 (b), General Rules of Practice and Procedure, 1941.

Although this rule states that, upon appeal, error may be assigned as to the submission of issues, we do not construe this to apply to an issue filed in the case long before the trial date and accepted without objection down to the very last stage of the proceedings. An objection to an issue must be seasonably made in order to obtain the consideration of it on appeal, and we hold that, under the facts of this particular case, where the issues were filed on May 19, 1944, and the trial held on September 28, 1944, claimant's objection came too late.

To hold that a litigant may make a belated move like this in a statutory proceeding especially designed to avoid technical legal maneuvers, would be contrary to

the purpose of the statute and to the spirit, if not the letter, of the General Rules of Practice and Procedure of this Court. There is no difference in principle between the submitting of issues from the Orphans' Court and Courts of Equity, and from the State Industrial Accident Commission, insofar as the time for objecting to issues is concerned. In the former instance, the issues are made up in the original tribunal, while in the latter it is a function of the trial court to submit to a jury any question of fact involved. In either case, the same reason exists for giving the parties ample opportunity to consider and object to the issues well before the date of the trial. Nowhere can there be found any support for the practice of waiting until virtually the conclusion of the case before raising any objection.

To the contrary, as pointed out by this Court in the case of *Central Construction Corp. v. Harrison*, 137 Md. 256, 265, 112 A. 627, 631, "the proper and better practice in cases under the Compensation Act would be to frame and present the questions of fact to the trial court so that they may be passed upon by the court before the jury is sworn."

In that case the questions of fact proposed by the appellants were not presented to the court below until after the conclusion of the testimony, which was in accordance with the practice followed under the Act of 1894, Chapter 185. However, this Court held in *Schiller v. Baltimore & O. R. Co.*, supra, that Section 56 (now Section 70) of Article 101 of the Code, which provides that upon the hearing of an appeal from the Industrial Accident Commission, "the Court shall, upon motion of either party filed with the Clerk of the Court according to the practice in civil cases, submit to a jury any question of fact," contemplates the submission of issues in a manner analogous to the practice in cases sent from the Orphans' Court or Courts of Equity. This was cited with approval in the Harrison case, supra, in which it was further stated that a return to the practice under the Act of 1894 was not contemplated by the Workmen's Compensation Act.

It is relevant to note that under the Rules of the Supreme Bench of Baltimore City, issues in Workmen's Compensation appeals must be filed within fifteen days after the filing of the record of proceedings, and that all exceptions to issues must be in writing and filed with the clerk within ten days after the service of a copy of the issues excepted to. While these rules were not filed in the pending case, they serve to illustrate the principle applicable to the point now under consideration.

We therefore hold that, for the reasons hereinbefore stated, it was not reversible error to refuse claimant's A prayer, which sought the withdrawal from the jury of Issue No. 3.

In order to give finality to the jury's answer to this issue and to serve the statute's purpose "to secure to injured employees certain and prompt compensation for injuries sustained, without, as far as practical, the delays and pitfalls incident to technical procedure * * *" (*Central Construction Corp. v. Harrison*, supra,, 137 Md. at page 264, 112 A. at page 630), we deem it appropriate to construe the meaning of this answer in the light of the statutory provision which must govern the ultimate determination of the case by the Commission. This is the "Other Cases" paragraph of Subsec. 3, Sec. 48, Art. 101 of the Code, 1943 Supp., which is as follows: "Other Cases—In all other cases in this class of disability the Compensation shall be fifty percentum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment, or otherwise, if less than before the accident (but not to exceed eighteen dollars per week), payable during the continuance of such partial disability, but not to exceed three thousand dollars, and, subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest."

The preceding paragraphs under the same subsection, captioned "Permanent Partial Disability," deal with the loss, or loss of use, of specified members of the body and

provide a schedule of compensation on a fixed weekly basis. It is to be noted, however, that the "Other Cases" paragraph prescribes no such basis or schedule and gives no specific authority to the Commission to fix the number of weeks. It simply says that his compensation shall be "fifty percentum of the difference between his avearge weekly wages and his wage-earning capacity thereafter," etc., without prescribing any method by which the Commission is to determine this capacity.

Applying this language of the statute to the fact found by the jury in their answer to Issue No. 3, the claimant in the instant case in suffering a 25 per cent. disability, is construed to have had his "wage-earning capacity" reduced to 75 per cent. That means that his compensation is to be fixed at fifty per centum of the difference, namely 25 per cent. of his average weekly wages. In other words, "disability" has reference to wage-earning disability or loss of wage-earning capacity, and payments are to be made on that basis. *Jirout v. Gebelein*, 142 Md. 692, 121 A. 831; *Baltimore Tube Co. v. Dove*, 164 Md. 87, 164 A. 161; *Baltimore Publishing Co. v. Hendricks*, 156 Md. 74, 143 A. 654; *Bethlehem Steel Co. v. Mayo*, 168 Md. 410, 177 A. 910.

Although the statute prescribes that these payments shall be made "during the continuance of such partial disability" and the subsection we are now discussing pertains to the type of disability that is "permanent," thus indicating, if literally construed, that every claimant under the "Other Cases" paragraph would ultimately get the limit of $3,000 compensation, this Court has not adopted such a construction. We have held that, in accordance with this paragraph, the State Industrial Accident Commission may fix the amount and the number of weekly payments, and set an aggregate sum less than the statutory limit of $3,000.

That was precisely the ruling in *Baltimore Tube Co. v. Dove*, supra, and the same construction was followed in *Gorman v. Atlantic, Gulf & Pac. Co.*, 178 Md. 71, 12 A. 2d 525. In the former case, an award was made un-

der the "Other Cases" paragraph for fifty-five and five-ninths weeks and the aggregate was $1,000. In the latter, the allowance was under the same paragraph and was for fifty-five and two-thirds weeks, not to exceed $1,000. The following language of the opinion in the Dove case, *supra* [164 Md. 87, 164 A. 166], is particularly applicable here: "The fact that the payment of compensation was extended over a definite number of weeks does not indicate that the statute was not followed as to its requirements in the ascertainment of compensation, especially in cases like this of permanent partial disability. This provision of the statute is not one of recent origin, and we may say that in all such cases heretofore passed- on by the Commission, so far as we are informed, the compensation has been awarded as here awarded; that is, by an allowance to claimant of compensation for so many weeks, the aggregate sum allowed not to exceed the sum named therein." See also *Coca-Cola Bottling Works v. Lilly,* 154 Md. 239, 140 A. 215.

Under the authority of these cases, therefore, we hold that in giving effect to the jury's answer of "25%" to Issue No. 3, the Commission may ascertain the amount of compensation on the basis prescribed in the "Other Cases" paragraph of the statute, as hereinbefore construed, and may fix the number and amount of weekly payments, not to exceed, however, the sum of $3,000 in the aggregate.

While on the whole case we will affirm the judgment of the trial court, we deem it relevant to point out that, as indicated earlier in this opinion, there is no evidence in the record that the appellant was temporarily partially disabled, or any facts given from which this could reasonably be deduced. It was error, therefore, for the court to have included in its charge to the jury an instruction which dealt with the law relative to that type of disability. This instruction was especially inapplicable since all three of the issues in the case pointedly excluded any reference to temporary disability. However, even assuming that the appellant's point is well taken that

he duly reserved an exception to that part of the court's charge—which it is not necessary now to decide—the error was harmless and unprejudicial in view of the jury's finding that claimant's disability actually was permanent, rather than temporary.

The court's charge in all other respects presented the law of the case fairly and correctly, thus disposing of appellant's exceptions twelve to twenty, inclusive, which were directed to that element in the case.

There were twenty exceptions, altogether, reserved by the appellant and two of these, the fourth and the eleventh, were waived. It is admitted that exception No. 9 does not relate to any ruling on the part of the trial court and, therefore, raises no reviewable question here. That leaves for consideration the other eight exceptions.

As to these, we find no difficulty in affirming the rulings. The first two exceptions present the question as to whether or not it was proper to have permitted Dr. Voshell to testify before the court and jury, on appeal, as to an examination of the claimant made by him after the case had been decided by the State Industrial Accident Commission, this same doctor having testified before the Commission as to examinations made by him before the final award, which was on May 3, 1944. Specifically, the objection was to Dr. Voshell's testimony concerning an examination made by him on June 20, 1944. Exceptions Nos. 3, 5, 6, 7 and 8 have relation to this same point of law, namely, the admitting of testimony concerning the appellant's activities after the date of the decision of the State Industrial Accident Commission and to the court's ruling on the prayers on this point.

In disposing of these particular exceptions, it is sufficient to say that since the passage of Chapter 545 of the Acts of 1935, and the decisions of this Court subsequent thereto, it is settled that at a trial on appeal from the State Industrial Accident Commission the testimony is not confined to that taken before the Commission, but each side has the right to call witnesses to support its

case. *Meyler v. Mayor and City Council,* 179 Md. 211, 17 A. 2d 762; *Spence v. Bethlehem Steel Co.,* 173 Md. 539, 542, 197 A. 302; *Baltimore v. Perticone,* 171 Md. 268, 273, 188 A. 797; *Savage Mfg. Co. v. Magne,* 154 Md. 46, 139 A. 570. That would, logically, include the testimony of a medical expert reporting the result of an additional examination made by him of the claimant between the date of the Commission's award and the trial of the case on appeal.

The provision of the statute, Code, Art. 101, Sec. 70, that the burden of proof shall be upon the party attacking the decision of the Commission does not mean that the attack may be only by presentation of the record as it came from the Commission, but that it may be fortified by legally competent evidence adduced subsequent to the date of the Commission's award.

The Act of 1935, Chapter 545, repealed Chapter 406 of the Acts of 1931, which confined the trial on appeals from the State Industrial Accident Commission to the transcript of the record made before the Commission. By this repeal, Chapter 587 of the Acts of 1927 was restored, with the net result that emphasis was laid on the original purpose and design of the entire law, Chapter 800, Acts of 1914.

This statutory purpose is further indicated by Section 70, above referred to, wherein it is stated that "the proceedings in every such an appeal shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced." It would be inconsistent with this purpose to require the parties to go back over the course of the proceedings and file a petition to reopen the case before the Accident Commission, as urged by the appellant in the instant case. Such a procedure has no support in reason or authority under the statute as it now stands.

Exception No. 3 is to the statement of Dr. Moore that "this long convalescence may be influenced by the fact that he is at present receiving twenty dollars a week compensation." This exception, besides being unsound

in law, is at variance with the position taken by appellant in offering his ninth prayer which asks the Court to instruct the jury to consider claimant's disability, physical and mental. By "mental" appellant undoubtedly meant psychological, and that was precisely what Dr. Moore was including in his report when he made the statement excepted to. That statement was simply a short part of his report and taken with the whole context, as hereinbefore quoted in this opinion, is shown to be free from objection.

The one remaining exception is No. 10 which was to the court's ruling on claimant's B and C prayers. These prayers sought a directed verdict for the claimant on the ground of alleged permanent total disability. In disposing of this exception it is sufficient to say that the testimony of the three medical experts, and also that of the appellee's two lay witnesses, Medlin and Thorpe, furnish abundant evidence, if believed by the jury, to support the finding that claimant was not permanently totally disabled. The court was, therefore, correct in refusing these prayers.

Finding no reversible error in any of the rulings of the trial court, we will affirm the judgment from which the appeal was taken.

*Judgment affirmed, with costs.*