Hershall COX

v.

**AMERICAN STORE EQUIPMENT CORPORATION.**

Civ. A. No. 17468.

United States District Court D. Maryland.

April 19, 1968.

Martin E. Gerel, Ashcraft & Gerel, Washington, D. C., for plaintiff.

Joseph H. Young, Baltimore, Md., for defendant.

NORTHROP, District Judge.

This case is before the court by stipulation and agreement of the parties that in the event this court shall find, in connection with the labor contract in question, that "industrial loss" as contained in Maryland's Workmen's Compensation Act, Md. Code Article 101, Sec. 36(4) (a) is comparable to loss of "wage earning capacity" of Section 8(c) (21) of the District of Columbia Compensation Act, Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 908(c) (21), then the exact amount of payment to be made in accordance with such finding shall be determined by the parties and plaintiff's Motion for Summary Judgment will be withdrawn.

Plaintiff Cox was employed by the defendant, American Store Equipment Corporation, to perform certain carpentry work at the United States Naval Academy, Annapolis, Maryland. While so employed Cox sustained various injuries, which injuries and the extent thereof were determined by the Maryland Workmen's Compensation Commission on May 17, 1965.

Subsequently, suit was filed on a contractual provision whereby the defendant agreed with the plaintiff's union, the Carpenters' District Council, to

carry an excess compensation policy on its employees when they are working outside the District of Columbia in certain areas contiguous to the District of Columbia. It is not disputed that the plaintiff comes within the provisions of the agreement and is entitled to any excess coverage provided for in the agreement.

Originally, this case was removed from the Circuit Court for Anne Arundel County pursuant to the provisions of 28 U.S.C. § 1441. The jurisdiction of this court is based on diversity of citizenship of the parties and requisite amount. 28 U.S.C. § 1332. The contract provision upon which this suit is based is as follows:

"The employer will carry an excess compensation policy on his employees when they are working outside of the District of Columbia which shall give the employees, represented by the Carpenters' District Council, additional compensation in Maryland and Virginia equal to that of the District of Columbia." Agreement Between Construction Contractors Council and Carpenters' District Council, Article VII, Sec. 12, May 1, 1961.

Defendant did not carry the required excess compensation policy but elected to insure itself and admittedly is obligated to make payments to its employees equal to those against which it contracted to insure. It is not disputed that this contract is valid and enforceable. Nelson v. Victory Electric Works, Inc., 227 F. Supp. 404 (D.Md.1964), aff'd, 338 F.2d 994 (4 Cir. 1964).

The Maryland Commission determined that plaintiff sustained permanent partial disability of 15% loss of use of his left arm and 10% industrial loss of the use of his body as a result of injuries to his neck and back. Thus, of the various classes of disability provided for in the Maryland and Federal statutes, we are concerned only with subdivision (c) of the Longshoremen's and Harbor Work-

ers' Compensation Act, 33 U.S.C. § 908, and subdivisions (3) and (4) of the Maryland Workmen's Compensation Statute, Md. Code Article 101, § 36, only these sections being applicable to permanent partial disabilities.

With respect to plaintiff's arm disability there is no dispute as to the additional amount of compensation to which he is entitled. Md. Code Article 101, § 36(3) provides for compensation for certain enumerated injuries, assigning to each a certain number of weeks' compensation to be paid:

"*Permanent partial disability—Specific injuries.*—(a) In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two thirds per centum of the average weekly wages, in no case to exceed twenty-five dollars per week and not less than a minimum of fifteen dollars per week unless the employee's established weekly wages are less than fifteen dollars per week at the time of the injury, in which event he shall receive compensation equal to his full wages, but in no case to exceed twelve thousand five hundred dollars ($12,500) in the aggregate and shall be paid to the employee for the period named in the schedule as follows:

"* * * * * *
"(b) * * * * * .
"Arm—For the loss of an arm, two hundred and fifty-two weeks."

The Commission determined that plaintiff's weekly wages were $160. Two-thirds of this weekly average entitled plaintiff to the maximum weekly amount of twenty-five dollars. And since his disability was determined to be 15%, he was entitled to the weekly amount for a total of 37.8 weeks (15% of 252 weeks, the total number of weeks allowable for the loss of the whole arm).

The Federal act is essentially the same as the Maryland provision except that

the weekly amount is limited to $70 instead of $25. 33 U.S.C. § 906(b). And the total number of weeks during which compensation is to be paid is 312 weeks for the loss of an arm instead of 252 weeks. 33 U.S.C. § 908(c) (1).

Thus, the parties agree that plaintiff is entitled to an amount over and above the Maryland Commission's award so that he would receive in the aggregate $70 per week for a period of 46.8 weeks for his arm injury.

The above-referred-to statutory provisions cover scheduled losses, and each statute provides a specific amount to be paid for the loss of particular members of the body or the loss of use thereof. The compensation that is awarded is determined simply by the nature, location, and degree of injury. Plaintiff's injury to his neck and back, however, is not included in the scheduled loss sections of either statute, but is covered in a catch-all provision denominated "Other Cases".

Md. Code Article 101, § 36(4) (a) provides that

"In all other cases of disability other than those specifically enumerated disabilities set forth in subsection (3) of this section, which disability is partial in character, but permanent in quality, *the Commission shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury and in determining such proportion or percentage of impairment resulting in an industrial loss the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of the injury, and shall award compensation in such proportion as the determined loss bears to the sum of $12,500*, the said compensation to be paid weekly at the rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed twenty-five dollars per week, and not less than a minimum of fifteen dollars

per week unless the employee's established weekly wages are less than fifteen dollars per week at the time of the injury, in which event he shall receive compensation equal to his full wages, subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest." [Emphasis supplied.]

33 U.S.C. § 908(c) (21) provides as follows:

"Other cases: In all other cases in this class of disability *the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise*, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest." [Emphasis supplied.]

The total amount payable under the statute to an employee for compensation for injuries is not to exceed $24,000 in the aggregate. 33 U.S.C. § 914(m).

The defendant disputes that the finding of the Maryland Commission that plaintiff sustained a 10% industrial loss of the use of his body is equivalent to the finding that plaintiff's injury caused a disability resulting in 10% loss of wage-earning capacity, the latter being required under the Federal act. Thus, the defendant contends, since there has been no factual determination regarding plaintiff's loss of wage-earning capacity it is impossible to determine the additional amount, if any, to which the plaintiff would be entitled under the "Other Cases" provision of the Federal act for the injury to his neck and back.

The sole question presented herein is whether or not the determination of industrial loss under the Maryland statute is comparable to a determination of loss of wage-earning capacity to enable the

application of the higher rates of the Federal act to the Maryland Commission's award.

█ █ Under the scheduled loss provisions of the Federal act, loss of wage-earning capacity and the extent thereof is conclusively established when any of the enumerated disabilities is proved.

" * * * Congress has determined that a loss of wage-earning capacity and its extent are conclusively established when one of the enumerated physical impairments is proven to have arisen out of the employment." Travelers Insurance Co. v. Cardillo, 225 F.2d 137, 144 (2 Cir. 1955), cert. denied, Ira S. Bushey & Sons, Inc. v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955).

It is only when the injury falls within the purview of the "Other Cases" provision that a determination of loss of wage-earning capacity is required. In 33 U.S.C. § 908(h) the factors to be considered in making the determination are set out as follows:

"The wage-earning capacity of an injured employee in cases of partial disability * * * shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity; *Provided, however,* That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

The Maryland statutory scheme is similar in that

"The general purpose of the Workmen's Compensation Act is to provide compensation for *loss of earning capacity* resulting from accidental injuries sustained in industrial employment." Bethlehem-Sparrows Point Shipyard v. Damasiewicz, 187 Md. 474, 480, 50 A.2d 799, 802 (1947) [Emphasis supplied.]

When an injury falls within the scheduled-loss provision, the effect of the injury on earning capacity is presumed. The rationale behind this presumption is that

" 'Some injuries * * * may be so defined and classified that the appropriate compensation may, with a fair average of justice, be estimated in advance.' " Bethlehem-Sparrows Point Shipyard v. Damaziewicz, supra, at 480, 50 A.2d at 802, citing Sweeting v. American Knife Co., 226 N.Y. 199, 123 N.E. 82, 83, affirmed 250 U.S. 596, 40 S.Ct. 44, 63 L.Ed. 1161 (1919).

█ █ Those injuries whose effect on earning capacity cannot be estimated in advance are compensated for under the "Other Cases" provision of the statute. It is only when an injury falls within this section that the extent of "industrial loss" is to be measured by considering "among other things, * * * the occupation, experience, training and age of the injured employee at the time of the injury." Md. Code Article 101, § 36(4). It is apparent from the factors to be considered in determining industrial loss under the Maryland statute and loss of wage-earning capacity under the Federal act that both provisions require a determination of the effect an injury will have on the employee's ability to work and earn a wage after sustaining an injury. Unlike the scheduled-loss section, there is no presumption under the "Other Cases" provision that the injury will have a corresponding effect on the employee's working or earning ability. This factual determination must be made by the Commission before an award is allowed.

Consequently, this court finds no material difference in the determination of "industrial loss" under the Maryland statute and "loss of wage-earning capacity" under the Federal act.

The defendant argues that the history of the Maryland "Other Cases" provision militates against such a determination. The court in Baughman Contracting Co. v. Mellott, 216 Md. 278, 284, 139 A.2d 852, 855 (1958) pointed out that

> "Prior to 1947 the Workmen's Compensation Act provided that in 'other cases' than those enumerated under the caption 'Permanent Partial Disability' where the nature of various injuries and the compensation to be awarded therefore were specifically set out, *the compensation should be 50% of the difference between the employee's average weekly wages and his wage-earning capacity after the accident,* if less than before, but not to exceed a certain amount per week, 'payable during the continuance of such partial disability, but not to exceed three thousand dollars * * *.' " [Emphasis supplied and deleted.]

There was a great deal of litigation in the Maryland courts regarding administrative implementation of this provision. It appeared that the Commission was consistently awarding the maximum amount payable weekly and then indicated the percentage of loss of wage-earning capacity found by the percentage of the maximum given as the limit of the particular award. Townsend v. Bethlehem-Fairfield Shipyard, 186 Md. 406, 47 A.2d 365 (1946). The amount of the award granted by the Commission was held to be within the discretion of the Commission and not subject to review on appeal except that the award would have had to bear "a reasonable relation to the injury" and be "supported by substantial evidence." Baughman Contracting Co. v. Mellott, supra, 216 Md. at 285, 139 A.2d at 855; Bonner v. Celanese Corporation of America, 195 Md. 9, 13, 72 A.2d 686 (1949). The Commission had consistently made awards less than the statutory maximum so that payments to an employee would cease even though the disability remained. And, the courts repeatedly said that it was within the discretion of the Commission to so act.

It was only the factual determination of wage-earning capacity which was reviewable. And the practice of always awarding the maximum amount weekly in effect deprived the employee of an appeal because, as the court in Allen v. Glenn L. Martin Co., 188 Md. 290, 299, 52 A.2d 605, 609 (1947) pointed out:

> "If any of the parties felt aggrieved by the finding of the Commission as to the wage earning capacity of the claimant, an appeal could be had on that issue to the Courts. * * * [O]n appeal it is not within the province of the jury or of the Court sitting as a jury on appeal to find a verdict, or fix an amount, or to make an award for any amount, or to fix the rate or period of compensation, but merely to find the facts."

In essence, then, the change worked by the 1947 amendment was to preserve the claimant's right of appeal by permitting the Commission to indicate the percentage of industrial loss, or earning capacity, found by the percentage of the maximum given as the limit of the particular award. In this way the right of appeal is preserved because, unlike before where the amount of the award was purely a matter of discretion, now it bore a direct relationship to the determination of industrial loss, or earning capacity.

It is apparent from the clear wording of the statute and from the history of the provision that the determination of industrial loss under the present provision is in essence a determination of loss of wage-earning capacity, and thus comparable to the "Other Cases" provision of the Federal statute.

Counsel for plaintiff will prepare an order in accordance with the opinions expressed herein and in accordance with the stipulation of the parties.