111 N.J. Super. 15 (1970)
266 A.2d 601
ELECTRONIC ASSOCIATES, INC., RESPONDENT-APPELLANT,
v.
SUSAN J. HEISINGER, PETITIONER-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1970.
Decided July 2, 1970.
*17 Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Kester R. Pierson argued the cause for appellant (Messrs. Mason, Griffin & Moore, attorneys).
Mr. Michael D. Schottland argued the cause for respondent (Messrs. Chamlin and Schottland, attorneys).
The opinion of the court was delivered by CARTON, J.A.D.
In this workmen's compensation case petitioner contended she incurred an occupational disease known as carpal tunnel syndrome. The judge of compensation dismissed her petition on the ground that she failed to give her employer, Electronic Associates, Inc., notice that she had contracted such occupational disease as required by statute. The county judge reversed the Division and remanded the matter to fix the amount of the disability award.
Electronic assails the judgment entered after the award on remand, principally contending that the County Court erred *18 in holding that the notice requirement was satisfied. The statute provides that unless the employer has actual knowledge the employee has contracted a compensable occupational disease or unless the employee gives the employer written notice within 90 days after he knew or ought to have known of the nature of his disability and its relationship to his employment, the employee shall have no right to recover disability benefits. N.J.S.A. 34:15-33. There is no claim here that Electronic had actual knowledge.
Petitioner began to work for Electronic July 18, 1966 and worked for about a year. Her work required the repeated twisting and turning of her wrists, manually placing individual wires in printed circuit banks and "harness" which were being assembled. She was laid off from July 14 to October 16, 1967. On the following November 1 she quit because of pregnancy. On January 10, 1968 she went to a hospital clinic because of pains in her right wrist. There an operation described as the release of a carpal tunnel was performed. In May-June 1968 when she experienced similar symptoms in her left hand, she went again to the hospital where an operation was performed on her left wrist. On September 12 of that year petitioner consulted counsel, who immediately wrote a letter to Electronic advising that they represented her and were bringing a workmen's compensation suit in her behalf.
It was stipulated that petitioner's disability was work-connected. The employer argues, however, that petitioner is barred from recovery because she knew or ought to have known of the nature of her disability and its relation to her employment when she had the second operation on June 6, 1968. If Electronic's contention is correct, the notice given on September 12 was a few days outside the 90-day period and she is barred from recovery. The basis of Electronic's contention is certain testimony of petitioner given in response to an inquiry from the trial court as to when she came to the decision that her condition came from her employment:
*19 I always thought when I had my first operation [January 10, 1968]. I thought that's when maybe it was from, but I couldn't be sure until I went back for my second, because I didn't lift, I didn't do any heavy work.
The trial judge found that although petitioner may have been aware of her disability, she was unaware of its relation to her employment until she consulted counsel and consequently that the notice was sufficient to comply with the statute.
We conclude that the evidence in the record warranted the trial court's determination that she did not know and could not reasonably be expected to know the relation of her disability to her employment. See Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 211 (App. Div.), certif. den. 27 N.J. 398 (1958). In this connection, we note that nothing in the testimony indicates that petitioner's disability was of such a general occupational character that its prevalence might make the employee apt to realize she had a compensable condition.
In arriving at this conclusion, we are mindful that notice requirements of this kind must be construed and applied in the light of petitioner's particular background, intelligence, experience, and the character of her disability, and "in the full light of the goals of the humane social legislation of which [they are] part" Panchak v. Simmons Co., 15 N.J. 13, 16 (1954). Nothing in that legislation dictates that, under the circumstances of this case, petitioner should be deprived of the statutory benefits. Particularly is this so because the employer does not dispute that petitioner's disability is work-connected nor attribute any prejudice to the failure to receive the notice at an earlier date.
The employer is correct, however, in its additional contention that petitioner is not entitled to the temporary disability awarded by the judge of compensation.
A primary purpose of the Workmen's Compensation Act is to provide a quick, efficient remedy for wage loss and the permanent impairment of physical capacity suffered by *20 a workman because of a work-connected injury. Cureton v. Jome Plumbing & Heating Co., 38 N.J. 326, 331 (1962). Temporary disability benefits within the intendment of workmen's compensation legislation represent a "partial substitute for loss of current wages." Ort v. Taylor-Wharton Co., 47 N.J. 198, 208 (1966); see Calabria v. Liberty Mut. Ins. Co., 4 N.J. 64, 68 (1950); Worthington v. Plainfield Bd. of Educ., 23 N.J. Misc. 14, 40 A.2d 9 (Dept. Labor 1944).
As described by an expert in the field,
* * * Temporary total * * * and temporary partial [disabilities] * * * are ordinarily established by direct evidence of actual wage loss. In the usual industrial injury situation, there is a period of healing and complete wage loss, during which temporary total is payable. This is followed by a recovery or stabilization of the condition, and probably resumption of work * * *. Permanent partial schedule awards, by contrast, are based on medical condition after maximum improvement has been reached, and ignore wage loss entirely * * *.
[2 Larson, Workmen's Compensation Law, § 57.10, at 4 (1969)]
See Berkowitz, "The Wage-Loss Theory of Evaluating Disability in Workmen's Compensation," 82 N.J.L.J. 285 (1959).
Petitioner here is entitled to no award for temporary disability because she suffered no current wage loss as a result of an ailment attributable to her occupation. Rather, her loss of wages was the direct result of the voluntary termination of her employment. The reason for cessation of work was for a cause totally unrelated to her employment, namely, her pregnancy  a condition compensable under another sector of our laws, N.J.S.A. 43:21-29. Since her right to receive wages had ceased long prior to the onset of the debilitating occupational disease, she suffered no wage loss for which temporary disability could serve as a partial substitute. See Ort v. Taylor-Wharton Co., supra. Thus she was entitled to receive the award only for the permanent disability which she suffered and which, consonant with the underlying philosophy of workmen's compensation *21 recovery, reflected her physical disability suffered as a result of the occupational disease irrespective of any loss of earning power. Silke v. Walter, 65 N.J. Super. 36 (Cty. Ct. 1960), aff'd 69 N.J. Super. 208 (App. Div. 1961).
We do not construe the concept of temporary disability to include wage loss claims by those who have voluntarily terminated their employment for reasons unrelated to that employment. So to hold would depend upon creating a fictitious wage-earning status for the unemployed workman and run counter to the manifest tenor of N.J.S.A. 34:15-38  the statutory method for calculating the period for which temporary disability benefits shall be awarded.
N.J.S.A. 34:15-38 provides that the terminal date of the temporary disability period is "the first working day that the employee is able to resume work and continue permanently thereat * * *." The days included within the disability period are reduced by "any days and fraction thereof the employee was able to work during this time * * *." This phraseology strongly suggests that temporary disability has relevance only in an employment situation wherein the injured workmen's enjoyment of current wages has been suspended by a work-connected injury.
This interpretation of temporary disability benefits is not only consistent with the beneficent purposes of workmen's compensation laws but also harmonizes with the comprehensive design of other legislation intended to benefit the labor force. Individuals in situations comparable to that of petitioner are not left without remedy. They are entitled to receive permanent disability awards and, where authorized, medical expenses, N.J.S.A. 34:15-30 to 35, N.J.S.A. 34:15-15. Like petitioner, who chose to retire because of her pregnancy, they would be entitled to temporary disability benefits under N.J.S.A. 43:21-29. Compare Iorio v. Board of Review, 88 N.J. Super. 141 (App. Div. 1965), with New Jersey Bell Tel. Co. v. Board of Review, 78 N.J. Super. 144 (App. Div. 1963), aff'd 41 N.J. 64 (1963). Should such individuals, after the period of *22 temporary disability, make an unsuccessful attempt to resume work, they can, if qualified, obtain unemployment compensation benefits under N.J.S.A. 43:21-1 et seq. Compare Seatrain Lines Inc. v. Medina, 39 N.J. 222 (1963), with Butler v. Bakelite Co., 32 N.J. 154 (1960). The award of temporary disability benefits in this case is unwarranted in light of this interlocking, complementary social legislation.
The judgment of the County Court reversing the Division's dismissal of the petition is affirmed. The judgment of the Division on remand is modified to eliminate the award for temporary disability benefits.