569 A.2d 697

**Edward VICTOR**

v.

**PROCTOR & GAMBLE MANUFACTURING COMPANY.**

**No. 92, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 15, 1990.

Herbert Burgunder, Jr. and John S. Hashim, Jr. (Horn, Bennett & Redmond, P.A., all on brief), Baltimore, for petitioner.

Robert C. Erlandson (E. Johanna Gibbon, Lord & Whip, P.A., all on brief), Baltimore, for respondent.

Argued before MURPHY, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (Retired, Specially Assigned) and JOHN J. GARRITY, Judge of the Court of Special Appeals of Maryland (Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Edward Victor sustained a disability resulting from an accidental personal injury arising out of and in the course of

his employment by Proctor & Gamble Manufacturing Company. He was entitled to compensation as prescribed by the Workers' Compensation Act, Maryland Code (1957, 1985 Repl.Vol., 1989 Cum.Supp.), Art. 101.[1] Victor was awarded compensation for temporary total disability, and, later, was granted a supplemental award for permanent partial disability. Shortly before the award for permanent partial disability, at age 62 years and physically able to work, he voluntarily retired from his employment at Proctor & Gamble, whereupon he received $250,000 under a profit-sharing plan and his regular social security benefits. His physical ability to work continued until 29 December 1988 when his work-related condition worsened, causing him to be temporarily totally disabled. Upon Victor's petition, the Workers' Compensation Commission reopened the case and, upon hearing, awarded temporary total disability from 29 December 1988 "and continuing." It ordered, however, that the payment of the award be suspended pending any appeal

[b]ecause this case involves the novel issue of whether temporary total benefits, which are awarded until maxi-

---

1. Article 101 is entitled "Workmen's Compensation." Section 14A(a) of the Article, enacted in 1984, directs that all terminology referring to "workmen's" shall be revised as "workers." The terms "workmen's compensation" and "workers' compensation" are considered to be synonymous. Section 14A(b).

   Section 15 of Article 101 establishes the exclusive liability of a subject employer to

   pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job except when such drug has been administered or taken in accordance with a physician's prescription. Section 36(2) deals with temporary total disability compensation.

mum medical improvement is reached, are unavailable to a claimant who has voluntarily retired....[2]

Proctor & Gamble appealed to the Circuit Court for Baltimore City which reversed the Commission. The circuit court judge jettisoned the award of temporary total disability granted by the Commission on his determination that "the purpose of Art. 101, § 36(2) is to compensate a worker for wages he has lost due to injury." He explained:

The Worker's Compensation statute is not designed to provide extra retirement benefits to a claimant who has voluntarily removed himself from the work force. In this case, Claimant voluntarily retired in 1986 and subsequent to that time petitioned to reopen due to worsening of condition of his knee. It is beyond dispute that had claimant still been working, he would have received temporary total benefits for the period of time it took for him to heal or for the time he was wholly disabled and unable to work. Because Claimant retired, however, he was not going to be able to work or to earn wages even after his injury had healed. Due to his retirement, he had no expectation of receiving wages upon a return to work. Therefore, this Court concludes that a claimant who has voluntarily retired is not entitled to temporary total disability after retirement.

Victor noted an appeal to the Court of Special Appeals and prayed that this Court issue a writ of certiorari. We certified the case to us before decision by the intermediate appellate court. The petition for certiorari posed the question

whether in a worker's compensation case a claimant who has voluntarily retired is entitled to temporary total disability benefits after retirement.

We have not addressed this issue before, and, to resolve it, we rely on the language of the statute in the context of

---

**2.** According to the agreed statement of facts pursuant to Maryland Rule 8–413(b) set out in Victor's brief, he reached maximum medical improvement and was physically able to work on 19 June 1989.

the goals and objectives it seeks to achieve. *Subsequent Injury Fund v. Teneyck,* 317 Md. 626, ——, 566 A.2d 94 (1989); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–516, 525 A.2d 628 (1987).

■ The purpose of the Workers' Compensation Act is set out in fine detail in the Preamble to Acts 1914, ch. 800. We have recognized those legislative declarations in the many cases concerning the Act which have come before us.

> The Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries.

*Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544 (1944).

> [T]he overall purpose of the Act ... is to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment.

*Howard Co. Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 531, 418 A.2d 1210 (1980). *See Unsatisfied Claim Bd. v. Salvo,* 231 Md. 262, 264, 189 A.2d 638 (1963); *Egeberg v. Md. Steel Products Co.,* 190 Md. 374, 379, 58 A.2d 684 (1948). The Act shall be so interpreted and construed as to effectuate its general purpose. Art. 101, § 63; *Wiley Mfg. Co. v. Wilson,* 280 Md. 200, 217, 373 A.2d 613 (1977). And in our consideration of the propriety of the action of the Commission, we are mindful that the Commission, not bound by "the usual common law or statutory rules of evidence or by any technical or formal rules of procedure," other than provided by the Act, is "to ascertain the substantial rights of the parties and to carry out justly the spirit of this article." Art. 101, § 11. Furthermore, in any proceeding for the enforcement of a claim for compensation under the Act, there is, in the absence of substantial evidence to the contrary, a presumption by legislative command that the

claim comes within the provisions of the Act. Art. 101, § 64(a). The short of it is that the Act

should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant.

*Walls,* 288 Md. at 530, 418 A.2d 1210.

It is clear on the face of the Act that entitlement to compensation is based on an accidental personal injury arising out of and in the course of employment, generally without regard to fault, which injury results in the employee's disability or death. Art. 101, § 15 (*see* note 1, *supra* ). Whether the injury be permanent and total, § 36(1), or temporary and total, § 36(2), or permanent and partial, § 36(3), or temporary and partial, § 36(5), it is the "disability" arising from the injury that calls for the compensation and benefits. Compensation and benefits are referenced to disability throughout the Act. This is so not only in § 15 prescribing the duties of employers and in § 36 establishing amounts of compensation for the categories of injuries, but, for example, in §§ 22 and 23 (disability from occupational disease); § 25A (occupational deafness); § 26 (duty of employee and employer to report disability from occupational disease); § 32 (agreements between railroads and employees for payment of compensation) § 35 (compensation to prisoners); § 39 (application for compensation); § 40(b) (readjustment of compensation upon aggravation of disability). Section 49A, concerning lump sum payments, speaks in terms of "disability benefits." The question is what the legislature intended by the word "disability."

█ Although "disability" with respect to an injury arising from an industrial accident is not defined in the Act, in the light of the legislative and judicial pronouncements of the purposes of the Act, the Act's mandate as to how it shall be interpreted and construed, the statutory declaration with respect to the application of the Act's provisions, and the legislature's adoption of certain presumptions in any

proceeding for enforcement of a claim for compensation, we have related "disability" to "earning capacity." In *Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799 (1947), we said flatly:

> The general purpose of the Workmen's Compensation Act is to provide compensation for *loss of earning capacity* resulting from accidental injuries sustained in industrial employment (emphasis added).

To like effect is *Queen v. Queen,* 308 Md. 574, 586, 521 A.2d 320 (1987); *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980); *Miller v. McGraw Co.,* 184 Md. 529, 540, 42 A.2d 237 (1945); *Paul v. Glidden Co.,* 184 Md. 114–119, 39 A.2d 544 (1944). *See Cox v. American Store Equipment Corporation,* 283 F.Supp. 390, 394 (D.Md.1968). As early as 1916 the then State Industrial Accident Commission observed that "[t]he primary purpose of the Compensation Act seems to be to provide compensation for loss of *earning power."* 1 L.J. Harshman, *Maryland Workmen's Compensation Cases,* reporting Claim No. 481, James C. Leonard, employee, Cambridge Mfg. Co., employer, Fidelity & Casualty Co. of N.Y., insurer (emphasis added). With reference to occupational diseases, the legislature has defined "disablement" as

> the event of an employee's becoming actually incapacitated, either partially or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease....

Art. 101, § 67(15). It then defined "disability" as "the state of being so incapacitated." [3] *Id.* In *Miller v. Western*

---

3. *Cox v. American Store Equipment Corporation,* 283 F.Supp. 390, 394 (D.Md.1968), points out that

> [w]hen an injury falls within the scheduled-loss provision, the effect of the injury on earning capacity is presumed.

*Cox* quotes *Beth. Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799 (1947), citing *Sweeting v. American Knife Co.,* 226 N.Y. 199, 123 N.E. 82, 83, *affirmed,* 250 U.S. 596, 40 S.Ct. 44, 63 L.Ed. 1161 (1919), for the rationale of this presumption:

*Electric Co.*, 310 Md. 173, 528 A.2d 486 (1987), a majority of the Court held that "one who claims compensation for permanent partial disability produced by an occupational disease need not show actual wage loss as a prerequisite to recovery." At 187, 528 A.2d 486. Adkins, J., speaking for the Court, declared: "Actual incapacity from employment (whether total or partial) [and, we think, whether permanent or temporary] is the test in occupational disease cases...." *Id.* We stated: "That a claimant's wages have not diminished or have increased since the onset of the disease may be relevant on the issue of actual incapacity." At 187–188, 528 A.2d 486. "But," we observed, "proving actual wage loss is not a *sine qua non* of obtaining compensation for occupational disease." At 188, 528 A.2d 486. We pointed out, at 187, 528 A.2d 486, that a statute should not be interpreted so as to produce an absurd result inconsistent with its purpose, citing *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. at 516, 525 A.2d 628. We explained:

> [S]trict adherence to a wage-loss requirement has the potential for absurd results. It may deprive a physically-disabled worker of an award, and essentially penalize the worker's "laudable" efforts to keep working. It also promotes the fiction that a worker, simply because of his level of earnings, is not suffering from a permanent [or, we believe, a temporary] partial disability.

*Miller*, 310 Md. at 187, 528 A.2d 486.[4] By so defining the word the legislature assured that "disability" with respect to occupational diseases was consistent with "disability"

---

> Some injuries ... may be so defined and classified that the appropriate compensation may, with a fair average of justice, be estimated in advance.

**4.** In reaching the holding in *Miller v. Western Electric Co.*, 310 Md. 173, 528 A.2d 486 (1987), the Court explicated *Belschner v. Anchor Post*, 227 Md. 89, 175 A.2d 419 (1961). *Miller* 310 Md. at 188–191, 528 A.2d 486. We concluded "that *Belschner* states no more than ... lack of wage loss may be relevant to show absence of actual incapacity, but is not necessarily conclusive." *Miller*, 310 Md. at 191, 528 A.2d 486.

with respect to industrial accidents—namely, "earning capacity."

It is true that a percentage of the pre-injury average weekly wages of the employee, subject to a certain maximum and minimum limit, is considered in determining the *amount* of the award for temporary total disability. Art. 101, § 36(2), but this does not indicate that the legislature intended that compensation be awarded for actual loss of wages as distinguished from earning capacity. When it looked to "disability" as the basis for compensation, it did not speak in terms of actual loss of wages and made no comparison of pre-injury actual wages with post-injury actual wages. As we have seen, in our past constructions of the Act, we have interpreted "disability" to mean "earning capacity." Our present examination of the Act provides no reason to depart from that interpretation.[5]

Given that disability envisions diminished earning capacity and not actual loss of wages per se, it follows that Victor's voluntary retirement from his job at Proctor & Gamble had no effect whatsoever on his entitlement to compensation for temporary total disability. We have declared that the

---

5. The Workers' Compensation Act relates "actual lost wages" to employee benefits only in § 36B:

   In addition to the amounts to be paid an employee entitled to receive compensation under this article, an employee will be entitled to reimbursement from his employer of actual lost wages due to time spent while being examined by a physician or other examiner at the request of the employer or the employer's insurer. An employee is entitled to reimbursement from his employer of actual lost wages due to time spent traveling to and from and in attendance at any Commission hearing scheduled as a result of a continuance caused by action of the employer or employer's insurer. Section 33(c) of the Act refers to "actual wages" in prescribing:

   If compensation under this article is payable to a member of the organized militia, the average weekly wage for such payment shall be the wage provided for active duty in Article 65, § 32(b) of the Code, or the actual wages earned by the claimant in National Guard employment, whichever is greater.

   The terms do not otherwise appear with respect to compensation or benefits.

period of temporary total disability is the healing period, or the time during which the workman is wholly disabled and unable by reason of his injury to work. *Gorman v. Atlantic Gulf & Pac. Co.*, 178 Md. 71, 78, 12 A.2d 525 (1940). Victor's entitlement to compensation for temporary total disability continues until he has reached maximum improvement, at which time his earning capacity could be revalued in light of his then physical condition. *Vigneri v. Mid City Sales*, 235 Md. 361, 363, 201 A.2d 861 (1964); *Flood v. Merchants Ins. Co.*, 230 Md. 373, 375, 187 A.2d 320 (1963). *See* Art. 101, § 36(2)(ii)4. It is not disputed that at the time Victor retired he was physically able to work. The number and variety of reasons for retiring are almost unlimited. *See* 2 Larson, *Workmen's Compensation Law* § 57.64(b) (1989). But here the reason Victor retired is of no moment. When his condition resulting from the injury worsened, he was found to be totally disabled, albeit temporarily. During the healing period, and until he reached maximum improvement, he was deemed under the Act to be unable to work, even if he desired to do so, because he was totally disabled. His earning capacity during that period was nil. The circuit court judge declared that "because claimant retired ... he was not going to be able to work or to earn wages even after his injury had healed. Due to his retirement, he had no expectation of receiving wages upon a return to work." This conclusion, in any event, is simply not supported by the fact of Victor's retirement from Proctor & Gamble. Leaving that employment did not forever bar him from the labor force. Until he became totally disabled, he could have sought and obtained employment elsewhere, despite that he may have been partially disabled. He was not without expectation, by reason of his retirement, of receiving wages upon a return to work. It was not his retirement that impeded his earning capacity, but the total disability resulting from his accidental injury. This being so, he was entitled to the compensation and benefits appropriate to his temporary total disability.

The answer to the question presented by the petition for certiorari, in accord with the order of the Commission and contrary to the belief of the circuit court judge, is "yes." Victor is entitled to temporary total compensation as awarded.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE ORDER OF THE WORKERS' COMPENSATION COMMISSION;

COSTS TO BE PAID BY APPELLEE.

JOHN J. GARRITY, J., Specially Assigned, dissented and filed an opinion.

JOHN J. GARRITY, Judge, Specially Assigned, dissenting.

I respectfully dissent. In an effort to effectuate the "benevolent purpose" of the Workers' Compensation Act in favor of this particular retiree, the majority ignores the distinction between temporary and permanent disability compensation that this Court has repeatedly acknowledged. Indeed, a temporary disability period is a separate and unitary period of compensation distinguished from a permanent disability. *Queen v. Queen,* 308 Md. 574, 585, 521 A.2d 320 (1987); *City of Baltimore v. Oros,* 301 Md. 460, 468, 483 A.2d 748 (1984); *Jackson v. Bethlehem–Fairfield Shipyard, Inc.,* 185 Md. 335, 339, 44 A.2d 811 (1945); *Gorman v. Atlantic Gulf & Pacific Co.,* 178 Md. 71, 78, 12 A.2d 525 (1940). While addressing other issues in *Queen, supra,* Chief Judge Murphy observed on the Court's behalf:

Differentiating between temporary and permanent disabilities, several courts have observed that temporary disability payments are a substitute for lost wages during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity. Thus, these courts indicate that

permanent disability is not based solely on loss of wages, but is based on actual incapacity to perform the tasks usually encountered in one's employment, and on physical impairment of the body that may or may not be incapacitating. (Citations omitted).

*Id.* 308 Md. at 585, 521 A.2d 320.[1]  I view this to be the context in which the Court held, in *Miller v. Western Electric Co.*, 310 Md. 173, 187, 528 A.2d 486 (1987), a matter which involved an employee who suffered from an occupational disease, that an actual wage loss is not a prerequisite to recovery for permanent disability. Indeed, the case of *Beth. Shipyard v. Damasiewicz*, 187 Md. 474, 50 A.2d 799 (1947), which was relied upon by the majority to support its proposition that temporary total disability benefits are based on loss of one's earning capacity rather than wages, dealt with a workman who was permanently disfigured.

The question, then, is not what the Legislature intended by its use of the word "disability" in the Act, but rather, more specifically, what sort of loss it designed temporary total disability payments to compensate. In this regard, I agree with the "several courts" alluded to above in *Queen* and would hold that temporary total payments are a substitute for lost wages during the temporary disability period, "in order to enable claimant to support self and family during that period." *Stiennon v. State Accident Insurance Fund*, 68 Or.App. 735, 683 P.2d 556, 558 (1984), *citing Taylor v. S.A.I.F.*, 40 Or.App. 437, 595 P.2d 515, *rev. den.* 287 Or. 477 (1979); *see also Electronic Associates Inc. v. Heisinger*, 111 N.J.Super. 15, 266 A.2d 601 (1970), holding that where there is no wage loss, an award of temporary disability compensation "would depend upon creating a fictitious wage earning status for the unemployed workman ..." *Id.* 266 A.2d at 604.

---

1. In *Queen*, the Court went on to apply the temporary-permanent disability distinction in a divorce context, holding that "only the portion of the husband's award compensating for a loss of earning capacity during the marriage is marital property subject to equitable distribution by the trial judge." *Id.* 308 Md. at 586–87, 521 A.2d 320.

The rationale for applying a lost-wage measure of recovery to temporary disability claims is, to me, unassailable. Section 36(2) of the Act exists to support "injured workmen and their dependents" until they are able to return to work or are deemed permanently injured. The very word "temporary" obviously presupposes a resumption of employment with a particular employer. Furthermore, as the majority notes, the amount of a temporary total award is determined by reference to the average weekly wage of the employee.

The claimant, who is 64 years-of-age, however, had ended his employment with Proctor and Gamble approximately two years before his knee injury worsened, causing the temporary disability at issue. He was receiving Social Security payments, and possessed a $250,000.00 lump sum as a result of liquidating his profit sharing plan with Proctor. While he indeed could have acquired a new job after retirement, it would not have been with Proctor. Yet, the majority essentially requires Proctor to further fund the claimant's retirement. Proctor is required to compensate someone not in its employ and who, being in retirement, suffered no loss in wages. I find this result to be totally inconsistent with the Act's purpose and intent.

Courts in other states that have addressed this issue have uniformly supported Proctor's position. The case from outside of Maryland which is most clearly on point, and which involves a similar statute, is *Stiennon v. State Accident Insurance Fund,* 68 Or.App. 735, 683 P.2d 556 (1984). In *Stiennon,* the claimant sustained a compensable injury to his right knee in August 1979. In December 1979, he turned 65 and applied for his retirement in February of 1980. Later, in 1981, the claimant received a permanency award for his right knee. In 1982, the claimant underwent surgery. Although the insurer provided medical expenses, the claimant was denied temporary total disability since there was no loss of wages involved. The Oregon Court of Appeals noted that the Workers' Compensation Act's statutory purpose was to compensate a claimant for wages lost because of inability to work as a result of a compensable

injury. The Court remarked, "If the claimant has retired voluntarily following the injury, he can suffer no loss of wages, because, by definition he has no expectation of receiving wages." *Id.* 683 P.2d at 558.

In short, I believe the majority has engaged in an "earning capacity" analysis where such an approach is unwarranted. As I would apply the lost-wage standard to a worker who has been temporarily disabled, I would, therefore, affirm the judgment of the lower court. The claimant, a voluntary retiree of two years duration, could suffer no loss of wages compensable by Proctor, because he had no expectation of receiving wages from his former employer. Inherent in voluntary retirement is the claimant's desire not to return to work; he is no longer a member of Proctor's labor force. Indeed, the claim for temporary total disability benefits in the absence of wage loss is a claim which seeks a remedy where there is no damage.