NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FRANK KROV, PETITIONER, v. CENTAUR CONSTRUCTION
CO., LUMBER MUTUAL CASUALTY INSURANCE CO.,
RESPONDENT.

Decided August 15, 1940.

For the petitioner, *John T. Glennon* (*David Roskein*, of counsel).

For the respondent, *Bryan Stricker* (*James J. Skeffington*, of counsel).

\*     \*     \*     \*     \*     \*     \*

From the stipulations of counsel and the testimony adduced, I find and determine as follows:

That the petitioner was a carpenter employed by the respondent Centaur Construction Co. and was so engaged on work incident to the elimination of a grade crossing in Elizabeth, New Jersey.

During the latter part of August, 1938, the exact date of which is unknown to the petitioner, nor is the same essential (*Elio* v. *Singer Manufacturing Co.,* 10 *N. J. Mis. R.* 606; 160 *Atl. Rep.* 325; *Schafer* v. *Bernard,* 18 *N. J. Mis. R.* 119; 11 *Atl. Rep.* (2*d*) 605), he was standing on a scaffold taking down certain wooden forms when he was struck in the left eye by one of the strips of wood. Attached to the said

strip of wood was a nail and whether it was the nail or a splinter which struck the petitioner is uncertain, but caused a laceration producing considerable bleeding. The petitioner felt faint and the eyelid became swollen and black and blue (eccymatic). He left the scaffold, proceeded to a water faucet where he washed his eye with water and returned to work. During lunch hour, his eye swelled to the extent that he was unable to see out of it, and the eyelids were almost completely closed. On arriving home. that evening, he bathed the eye with a warm water boric acid solution and applied home remedies. He returned the next morning and continued to work for approximately two weeks. During that time, the swelling subsided, but the vision in the injured eye did not return to normal. He has been and still is unable to see with that member following the accident and there is no dispute that the petitioner is industrially blind in the left eye.

The petitioner affirmatively testified that he had no trouble with his vision prior to the accident; that as a carpenter he was required to and did, prior to the accident, draw and read plans and specifications and that his loss of vision in his left eye dates from the time of the accident.

There was produced on behalf of the petitioner, several lay witnesses to corroborate his testimony. One of them, Paul J. Hamilton, a fellow carpenter on this particular job when the petitioner was hurt, testified that although he did not witness the accident, he heard another worker call out "Krov was hurt." He ran over to the petitioner who had already descended from the scaffold, looked at his eye and noticed that it was "cut in the corner and bruised because it had commenced to turn purple," and that the bruise on the top of the lid and between the eye lashes and eyebrow, "was bleeding." He told the petitioner to get medical attention and saw Krov walk off in the direction of the office. When the petitioner returned to work thereafter, this witness observed that the eye was "badly discolored and the cut hadn't healed." Moreover, Hamilton had known Frank Krov for fifteen years prior to the date of the accident and he had observed the petitioner on numerous occasions reading blue prints and plans and doing carpenter work without any appar-

ent difficulty, and had a reputation of being one of the "best carpenters."

\*        \*        \*        \*        \*        \*        \*

There also testified on behalf of the petitioner, his foreman, Victor Cavanaugh, who admitted that he was informed of the accident shortly after it occurred by a fellow employe. Moreover, he went over to the petitioner and saw his eye bleeding.

The testimony is clear and decisive that during the latter part of August, 1938, the petitioner met with an accident which arose out of and in the course of his employment in the manner testified to by him, the details of which were corroborated by several fellow employes. That the respondent had due notice and knowledge of said accident has also been affirmatively established from the testimony of the foreman, Victor Cavanaugh, who was the petitioner's superior to whom the accident was reported by a fellow employe and who spoke to the petitioner, examined his eye, and saw that it was bleeding. Whether the respondent received notice of the accident from the petitioner directly, or from someone on the petitioner's behalf, such as a fellow employe, is immaterial. Nor does the fact that the vice-president's or timekeeper's books fail to disclose a report of an accident, avail the respondent in any respect. This, particularly in view of the testimony of the witnesses above referred to.

I find that the respondent had sufficient notice of the accident within the requirement of the statute. *General Cable Corp.* v. *Levins,* 124 *N. J. L.* 223; 11 *Atl. Rep.* (*2d*) 61.

Dr. William Boozan. an eye specialist of twenty-nine years experience in Union county, appeared on behalf of the petitioner. He testified that his examination disclosed that Krov's left eye showed a hemianopsia, or half-side blindness, with no response to light and that the fields of vision had been either destroyed or injured on the outer or temporal side. He found a beginning strophy and a temporal side blindness. It was the doctor's opinion that the blow which the petitioner received at the time of the accident was the competent producing cause of the condition. It was also his opinion that the petitioner was industrially blind in the left eye. It is

significant that this expert found no diseased condition in the eye to account for the condition, nor did he find a chronic vascular disease in either eye.

Dr. Samuel Hirschberg, also offered as an expert for the petitioner, testified that it was his opinion that the loss of vision in the left eye was due to the injury in question.

The respondent produced Dr. N. Zvaifler, who examined the petitioner on its behalf. It was his opinion that the petitioner was totally blind in the left eye, but that the same was due to a chronic vascular disease affecting the maculae, which disease he believed to be arteriosclerosis. This doctor failed to make any tests or pathological research to determine the nature and extent, if any, of the arteriosclerosis alleged to be present, nor did he make a general physical examination to corroborate his findings. *Murowisky* v. *Pyrene Manufacturing Co.,* 17 *N. J. Mis. R.* 390; 9 *Atl. Rep.* (2d) 683.

If the employer seeks to avoid liability for a cause for which it is not responsible, the burden of proof is on the employer to show such cause. *Atchinson* v. *Colgate,* 3 *N. J. Mis. R.* 451; 128 *Atl. Rep.* 598; *affirmed,* 102 *N. J. L.* 425; 131 *Atl. Rep.* 921; *Sverepa* v. *Manhattan Rubber,* 18 *N. J. Mis. R.* 248; 12 *Atl. Rep.* (2d) 861. The evidence adduced by the respondent in this, does not, in my opinion, sustain its contention.

The petitioner having lost no time from his work, is not entitled to compensation for temporary disability.

I find that the petitioner has sustained a permanent disability which I fix at 100 per cent. loss of usefulness of his left eye.

\*          \*          \*          \*          \*          \*          \*

STEPHEN J. LORENZ,
*Deputy Commissioner.*