NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ISABEL S. WORTHINGTON, PETITIONER, v. PLAINFIELD
BOARD OF EDUCATION, CITY OF PLAINFIELD, NEW
JERSEY, RESPONDENT.

Decided November 22, 1944.

For the petitioner, *Edwin J. O'Brien* (*Thomas Brett,* of counsel).

For the respondent, *Cox & Walburg* (*Victor Hansen,* of counsel).

A petition was filed in this matter, alleging an injury arising out of and in the course of the employment of petitioner as a school teacher for the Board of Education of the City of Plainfield. Respondent filed an answer specifically denying that the injury arose out of and in the course of the employment of petitioner as a school teacher of the City of Plainfield.

The matter came on before me at Newark, November 3d, 1944, at which time counsel for petitioner and respondent presented to me a written stipulation of all of the facts con-

cerning the injury to petitioner. The said stipulation provided as follows:

"Petitioner in this case was on March 30th, 1943, employed as a teacher in the home economics department of the Plainfield school system, earning $3,000 yearly. On that day she was working at Evergreen School, which was in charge of Mr. Davis, principal. In connection with a war loan drive, permission was granted by Mr. Davis for the United States Army to put on a demonstration of the uses of a jeep. The following notice was posted on the school bulletin board announcing the demonstration:

March 30th, 1943.

War Savings Song
Tune: Farmer in the Dell.

We'll buy our stamps to day,
We'll buy our stamps today,
Heigho—America,
We'll buy our stamps today.

It's Liberty for Aye!
It's Liberty for Aye!
Heigho—America
We'll buy our stamps today.

"Buy more and more War Stamps. Everyone should do this. It is the object of the Junior Red Cross Council to try to encourage the buying of more stamps. We would like to be able to buy a Jeep with our stamp sales To do this everyone must buy more stamps.

"Today a Jeep from Camp Kilmer will be on exhibit on the playground. The schedule for classes is below:

| 6p | — 9:30 | 3j | —10:12 | 5 | —10:48 |
| Kg | — 9:36 | 4f | —10:18 | 5D | —10:54 |
| 1Z | — 9:42 | 4b | —10:24 | 6H | —11:00 |
| 1 S | — 9:48 | 6A | —10:30 | 8C | —11:06 |
| 2o | — 9:54 | 7 R | —10:36 | 8B | —11:12 |
| 2K | —10:00 | 7 N | —10:42 | 7G | —11:18 |
| 3N | —10:06 | | | | |

No Junior Assembly today.

"In connection with the demonstration, the sergeant in charge of the jeep brought logs and wood and a wooden ramp or obstacle was constructed in the yard of the school. The jeep was to be driven up this ramp, which was built to a height of a foot or more off the ground ending abruptly so that after ascending the ramp the jeep had a drop of a foot or more back to the ground.

"Petitioner in response to said notice appeared with her class in the school yard at 11:15 A. M. and at the invitation of the driver of the jeep entered it together with another teacher and a number of children. They were driven around the school yard dodging trees and then up the ramp and off the abrupt end of same. The jeep at this time contained petitioner, another teacher and a large number of children, some of the latter being required to stand. While riding over the obstacle petitioner was holding onto a grip on the side of the jeep with her right hand and was helping to steady a child standing in front of her with her left hand. When the jeep dropped off the abrupt end of the obstacle she was bounced from her seat but clung with her right hand to the grip on the side of the jeep and as a result of the strain thus thrown on her right hand and arm she is alleged to have injured her right arm, shoulder and back.

"It is also stipulated that if Mr. Davis, principal of the school, were called he would state that he was present during part of the demonstration and that he gave no directions either for or against teachers and pupils riding in the jeep. Mr. Davis would also testify that prior to the time he learned that the petitioner rode in the jeep that he had seen some pupils ride in the jeep and then left the demonstration to attend to some other duties.

"It is also stipulated that if Mr. Hopper were called he would testify that he is the director of the Industrial and Fine Arts Department and the petitioner's superior; that he knew nothing about the demonstration until the petitioner some time in June, 1943, came to him and asked if he could do something about getting her compensation for this accident. He advised her all he could do was to report the matter to Mr. Zimmer, Secretary of the Board of Education, which he did.

"It is also stipulated that if Mr. Zimmer were called he would testify that he is the Secretary of the Board of Education of Plainfield and on March 9th, 1943, the following resolution was adopted by the Board of Education:

"Resolved, that the work of the employees of the Board of Education relating to any war effort constitutes a part of the voluntary or required school program of the Plainfield School District.

"It is further agreed that he would also testify that the Board of Education did not sponsor the demonstration and knew nothing about it until he was told by Mr. Hopper on June 13th, 1943."

After due consideration of the above stipulated facts I do find that the injuries sustained by petitioner on March 30th, 1943, while she was riding in the jeep, as aforesaid, arose out of and in the course of her employment. The injuries in question occurred on the school property and while petitioner was actually engaged in an activity that was at least sponsored by the Evergreen School at which she was working, if not by a formal approval of the Board of Education itself. It is a fact from the stipulation that there were school children in this jeep, that petitioner was actually in the jeep with the children and was even helping to steady or support one of them in the crowded vehicle. Her presence in the jeep was, therefore, clearly within the scope of her duties and it might even be said that she was required to be there due to the presence of the children, who undoubtedly required supervision under the circumstances. I, therefore, find as a matter of fact that petitioner's injuries on March 30th, 1943, arose out of and in the course of her employment within the meaning of our Workmen's Compensation Act, N. J. S. A. 34:15-1, et seq. On the question of disability, petitioner testified that she lacked strength in her arm and hand and has great difficulty in raising her arm because of pain in the upper arm and shoulder. She stated that this pain particularly affects her in her work when she has to reach up to write on a blackboard.

Doctor Max Kummel, who examined the petitioner on December 13th, 1943, testified that there was slight restric-

tion of forward flexion and abduction, some restriction of external rotation and on internal rotation considerable restriction. His diagnosis was sub-pluxation of the acromioclavicular joint with a frozen shoulder. He stated that at the time of his examination he found an existing disability of 12½% of total.

On behalf of respondent a report of Dr. Otis P. Chapman was submitted in evidence, which indicated that he had fixed the disability at 5% of total.

Since respondent refused to admit petitioner's injuries as compensable it was necessary for petitioner to secure medical aid herself and she testified that she originally was treated by Dr. Barnes of Plainfield, who treated her until June 30th, 1943, when the school term ended and she returned to her home in Rochester, New York. A report of Dr. Barnes was marked in evidence, which indicated that at the time petitioner returned home she was still in need of further medical treatment. While in Rochester she was treated by Dr. Carl T. Harris who hospitalized her at Genessee Hospital and rendered treatment by manipulation under anaesthesia. While in Rochester she was also given physiotherapy at Rochester General Hospital. At the suggestion of Dr. Harris, when petitioner returned to her teaching duties at Plainfield in September, 1943, she went to Dr. Elmer P. Weigel, who rendered treatment from September 7th, 1943, through January, 1944. For this medical treatment the following bills were by consent offered in evidence:

Dr. Barnes, $34; Dr. Boyes for X-rays, $10; Dr. Carl T. Harris, $65; Genessee Hospital, $104.95; Dr. Elmer P. Weigel, $129; Dr. John C. Desslock, $10; Rochester General Hospital, $22.

The bills of Drs. Barnes, Boyes and Desslock were paid by petitioner herself, as well as the bills of Genessee Hospital and Rochester General Hospital. The only bills outstanding and unpaid are those of Drs. Harris and Elmer P. Weigel.

As to the medical expenses, I do find that they were necessarily incurred by the petitioner for the treatment of the injuries sustained and I do find that they are reasonable

with the following exceptions: The reimbursement for the bill of Genessee Hospital is reduced to $80.95, since that bill shows that petitioner had a private room at $7.50 per day, whereas the standard rates in New Jersey are $5.50 per day for the first week and $5.25 for the succeeding weeks. Petitioner will, therefore, be reimbursed for the money expended at the Genessee Hospital in the sum of $80.95. The bill of Dr. Harris is reduced from $65 to $56 to conform with the charges usually paid for such services by physicians in this state. The bill of Rochester General Hospital for physiotherapy treatment, which was paid by petitioner, is not strictly in conformity with the charges rendered for such services in this state and she is entitled, therefore, to reimbursement on this bill in the sum of $18.

After considering the medical evidence as to the nature and extent of the injuries, I do find that petitioner is not entitled to any temporary disability, there being no lost compensable time, and as to permanent disability, that she is entitled to 7½% partial permanent disability or 35 weeks compensation at $20 per week, amounting to $750.

It is, therefore, * * * ordered and determined that petitioner met with an accident arising out of and in the course of her employment with respondent on March 30th, 1943, and that respondent had due knowledge and notice of same.

*     *     *     *     *     *     *

JOHN C. WEGNER,
*Deputy Commissioner.*