281 N.J. Super. 13 (1995)
656 A.2d 443
DONALD PORTER, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
ELIZABETH BOARD OF EDUCATION, RESPONDENT-APPELLEE/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1995.
Decided April 11, 1995.
*15 Before Judges SHEBELL and KLEINER.
Donald Raymar argued the cause for appellant (Schneider, Goldberger, Cohen, Finn, Solomon, Leder & Montalbano, attorneys; Mr. Raymar, on the brief).
*16 Joseph Racioppi argued the cause for respondent/cross-appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Racioppi, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
Petitioner, Donald Porter, appeals from a judgment of the Division of Workers' Compensation, dated December 13, 1993, that denied petitioner any award for permanent disability arising out of an injury suffered while he was working for respondent, Elizabeth Board of Education. Respondent cross appeals arguing that petitioner's January 15, 1992 injury was not a compensable accident and that the "judge erred in awarding the petitioner temporary disability over the summer months."

I
We first direct our attention to petitioner's assertion that the judge erred in his conclusion "that the Petitioner has failed to establish his burden on the issue of permanent disability, and, therefore, ... he has no permanent disability pursuant to N.J.S.A. 34:15-36." We agree that the judge erred, both factually and legally, in this determination.
In the recent case of Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 650 A.2d 1025 (App.Div. 1994), we again cited the primary purpose of the 1980 amendment to N.J.S.A. 34:15-36: "to eliminate awards for minor partial disabilities, to increase awards for the more seriously disabled, and to contain the overall cost of workers' compensation." Perez v. Monmouth Cable Vision, supra, 278 N.J. Super. at 282-83, 650 A.2d 1025 (citing Perez v. Pantasote, 95 N.J. 105, 114, 469 A.2d 22 (1984)). Here, however, the judge erred by interpreting too strictly the statutory definition of permanent partial disability and the Perez v. Pantasote court's instruction regarding the application of that section.
*17 Under N.J.S.A. 34:15-36 permanent partial disability is defined as:
a permanent impairment caused by a compensable accident or compensable occupational disease based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's working ability. Subject to the above provisions, nothing in this definition shall be construed to preclude benefits to a worker who returns to work following a compensable accident even if there be no reduction in earning. Injuries such as minor lacerations, minor contusions, minor sprains, and scars which do not constitute significant permanent disfigurement, and occupational disease of a minor nature such as mild dermatitis and mild bronchitis shall not constitute permanent disability within the meaning of this definition.
[N.J.S.A. 34:15-36 (emphasis added).]
The Supreme Court summarized the employee's burden as follows:
[T]he employee must first prove by demonstrable objective medical evidence a disability that restricts the function of his body or its members or organ. Second, he must establish either that he suffered a lessening to a material degree of his working ability or that his disability otherwise is significant and not simply the result of a minor injury. The burden of proving both of these elements rest with the petitioner.
[Perez v. Pantasote, supra, 95 N.J. at 118, 469 A.2d 22 (emphasis added).]
It is not disputed that petitioner has shown demonstrable objective medical evidence of disability that restricts the function of his body. The objective nature of the injury is demonstrated by an MRI, which revealed a large disc herniation with significant spinal cord compression. The subsequent surgery to his neck and pelvic area left him with scarring in both areas and significant restriction of neck motion. Further, it is quite clear from the findings of the examining experts on both sides that the surgery did not cure the petitioner's condition. Rather, it has left petitioner with adherent and indurated scarring, and with spasm and restriction of motion in his neck due to the bone grafting and fusion. This loss of motion clearly has resulted in a lessening of the functioning of his body.
In short, by no stretch of the imagination can it be concluded that petitioner suffered a minor injury or sustained scars that do not constitute significant permanent disfigurement. The Legislature *18 never intended that injured workers sustaining the kind of severe injury suffered here would be denied compensation because they failed to complain enough about the residuals of their injury and surgery or because their employment was of such a nature that the injury did not significantly interfere with their duties. Further, the reports of both medical experts revealed the existence of major permanent disability. The finding of the judge that petitioner suffered no permanent disability is not supported by the evidence in this case.

II
We turn our attention to the cross-appeal of respondent, and look first at the assertion that the judge's determination that petitioner's injury arose out of his employment is not supported by the record.[1] Although we find the issue raised by respondent to be significant, we are unable based on the present record and findings of the judge to make a determination on the matter. A remand is, therefore, required.
It is the function of this court when reviewing a decision of the Workers' Compensation court to decide whether the findings of fact made by the Judge of Compensation could reasonably have been reached on "sufficient credible evidence present in the record," considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). Additionally, if there has been a mistake in application of the law to the facts we must grant appropriate relief. Verge v. County of Morris, 272 N.J. Super. 118, 123, 639 A.2d 378 (App.Div. 1994).
It is clear that an injury suffered during the course of work does not per se entitle an employee to the benefits of the Workmen's Compensation Act, as it must also appear that the injury *19 arose out of the employment. Spindler v. Universal Chain Corp., 11 N.J. 34, 38-39, 93 A.2d 171 (1952) (citing Seiken v. Todd Dry Dock, Inc., 2 N.J. 469, 67 A.2d 131 (1949)). Because petitioner was merely waving his arm at the time he experienced pain, questions arise as to whether the injury was purely personal or peculiar to the individual and not a result of the employment. Spindler, supra, 11 N.J. at 39, 93 A.2d 171; George v. Great Eastern Food Products, Inc., 44 N.J. 44, 45, 207 A.2d 161 (1965).
In his findings, the Judge of Compensation stated:
The accident occurred when the Petitioner, in the course of his work, attempted to get the attention of students who were boisterous in the rear of his room, and in waving his arm to get their attention, he injured his neck.
The judge then went on to indicate that he found it to be an accident within the statutory and case law because "[w]hile the activity may have been expected, the result was unanticipated, and this satisfies the definition of accident."
It was insufficient for the judge merely to make a determination that an accident had occurred. The question is whether or not that accident was compensable within the contemplation of the Workmen's Compensation Act. N.J.S.A. 34:15-7. Simply stated, the accident must both arise out of and in the course of petitioner's employment. Spindler, supra, 11 N.J. at 38-39, 93 A.2d 171; see Howard v. Harwood's Restaurant Co., 25 N.J. 72, 83, 135 A.2d 161 (1957). On the facts of this case, the test is a simple "but for" test. Howard, supra, 25 N.J. at 83-84, 135 A.2d 161. Nonetheless, we cannot determine from the record on appeal or from the findings of the judge whether the act that caused petitioner's injury was nothing more than a simple everyday gesture, or whether there was something about it that made it peculiar to the employment, either in terms of the extent of the movement, its forcefulness or the excited condition of the petitioner caused by the "goings-on" in the classroom at the time.
Nowhere is there a description in the record of the gesticulation, although petitioner, during the course of his testimony, was asked to reenact the movement in question. Petitioner in testifying *20 stated: "So I did like this, admonishing them[,] to scold them, and something went in my neck." The judge in later reiterating for petitioner the previous testimony repeated: "You wanted to get their attention, so you waved your right arm to get to them." The petitioner agreed with this recounting of his testimony.
Neither counsel for the parties nor the judge described for the record what the waving movement consisted of. We cannot know whether it was in any way different from an ordinary salutation that one might give as a greeting or farewell to any other person. In the absence of such a record or observation, we are unable to arrive at a determination as to whether the judge was correct in concluding that the accident was compensable. On remand, specific findings based on a proper record must be made, and the proper test must be applied.

III
Respondent in its cross-appeal also urges that the judge erred in awarding temporary disability for the summer months when petitioner was on vacation during the school recess. The judge and counsel for the respective parties recognized that this was a significant issue early in the proceedings. The judge in continuing the case after the November 1, 1993 hearing specifically noted on the record that he had requested that the attorneys research the issue "to see if they can find any reported case dealing with the right of a contracted school teacher whose contract runs from September 1st of one year to June 30th of the following year to be paid temporary compensation, should he be unable to work between July 1st and August 31st." Although the attorneys agreed that they would provide the necessary research, we were advised at oral argument that no assistance was given to the judge prior to his deciding the issue.
Petitioner testified that he left work around the 4th of May and was out of work until that September in 1992, because he was unable to work following the surgery. To clarify the issue, the judge stated to petitioner:

*21 Essentially you were out of work the month of May, and the month of June for which you would have been paid a salary by the Board of Education. The month of July and August you would not normally be paid. You were on a ten month salary under contract?
THE WITNESS: Yes.
The parties did not take issue with the judge's statement that:
The contract runs from September 1st to June 30th, and although it is anticipated that the teacher will report to work the following September because he normally would have a contract prior to the expiration of the prior year, nonetheless, is a contract for ten months an annual employment simply because the employee may have a contract to commence again on September 1st of the year in which the prior contract expires on June 30th so as to deprive that employee of the right to temporary compensation.
The petitioner testified that he usually worked during the summer months, but that he did not do so during the summer of 1992 when he was disabled, nor did he find work the following summer.
We look to N.J.S.A. 18A:30-2.1, which requires that whenever a school teacher is absent because of personal injury caused by an accident arising out of and in the course of the employment, the school board shall pay the employee the full salary or wages for the period of such absence for up to one calendar year without having such absence charged as sick leave. It is further provided that the amount of the salary or wages paid or payable to the employee "shall be reduced by the amount of any workmen's compensation award made for temporary disability." Ibid.
We are convinced that the Legislature, in utilizing the term "calendar year" rather than "school year" as the applicable time period, has expressed an intent that school board employees be fully compensated for the time during which they are temporarily disabled without regard to whether that disability falls within the school year or the summer recess. This view is consistent with the Department of Education's interpretation of calendar year to mean a continuous twelve month period. See Williams v. Deptford Board of Ed., 192 N.J. Super. 31, 33, 41, 469 A.2d 58 (App.Div. 1983), aff'd, 98 N.J. 319, 486 A.2d 846 (1985). We, therefore, find no error in the judge awarding Workers' Compensation benefits to petitioner for temporary disability occurring during the summer recess. Failure to allow such an award would impact adversely on *22 the school boards as they might be required to pay full salary without the reduction allowed under N.J.S.A. 18A:30-2.1.
The judgment of the Division of Workers' Compensation is reversed. The matter is remanded for further proceedings.
NOTES
[1] Petitioner has failed to file any responsive brief with regard to the cross-appeal. It was asserted at oral argument that counsel's dereliction was attributable to his belief that the cross-appeal did not have merit. He obviously was mistaken.