713 A.2d 460

MONA J. OUTLAND, PETITIONER–APPELLANT, v. MONMOUTH–OCEAN EDUCATION SERVICE COMMISSION, RESPONDENT–RESPONDENT.

Argued January 21, 1998—Decided July 1, 1998.

*Bruce Fromer,* argued the cause for appellant (*Nelson & Fromer,* attorneys; *Wendi S. Ledwitz,* on the brief).

*Robert Silver,* argued the cause for respondent (*Michals, Wahl, Silver & Leitner,* attorneys).

*Aileen M. O'Driscoll,* argued the cause for *amicus curiae* New Jersey Education Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Ms. O'Driscoll, Richard A. Friedman* and *Kathleen A. Naprstek,* on the letter briefs).

*Cynthia J. Jahn,* Director Legal Department, argued the cause for *amicus curiae* New Jersey School Boards Association.

The opinion of the Court was delivered by

O'HERN, J.

We granted certification to consider an asserted conflict between the decision below and that in *Porter v. Elizabeth Board of Education,* 281 *N.J.Super.* 13, 656 *A.*2d 443 (App.Div.), *certif. denied,* 142 *N.J.* 455, 663 *A.*2d 1361 (1995). The issue in each case is whether a teacher employed under a ten-month contract, injured at work during the school year, is entitled to temporary disability benefits in workers' compensation during the summer recess period.

The conflict involves the interpretation of *N.J.S.A.* 18A:30–2.1. That section ensures that school employees who are unable to report to work because of injuries they received in the course of their employment receive their full salaries and lose no sick leave during the period of their disability. The section reads as follows:

Whenever any employee, entitled to sick leave under this chapter, is absent from his post of duty as a result of a personal injury caused by an accident arising out of and in the course of his employment, his employer shall pay to such employee the full salary or wages for the period of such absence for up to one calendar year without having such absence charged to the annual sick leave or the accumulated sick leave provided in sections 18A:30–2 and 18A:30–3.... Any amount of salary

or wages paid or payable to the employee pursuant to this section shall be reduced by the amount of any work[ers'] compensation award made for temporary disability.

[*N.J.S.A.* 18A:30–2.1.]

I

Mona J. Outland is employed by the Monmouth–Ocean Education Service Commission. (We shall refer to it as the Board.) A teacher of emotionally disturbed children, Outland suffered severe and disabling injuries when one of her students assaulted her on April 22, 1994. She was unable to return to work from April 23, 1994 to June 30, 1994, when the summer vacation period commenced.

At the time of her injury, Outland's weekly salary was $593. Despite her absence from school, she received 100% of that salary over the remainder of the school year: seventy percent ($415) by way of temporary disability benefits under a section of the Workers' Compensation Act, *N.J.S.A.* 34:15–12, and the remaining thirty percent ($178) under *N.J.S.A.* 18A:30–2.1.

Teachers normally are paid on the basis of an academic year rather than a calendar year. Most teachers thus do not receive pay checks during the summer, when schools are in recess. *N.J.S.A.* 18A:29–3, however, allows school boards to offer academic-year employees the option to have ten percent of their salaries withheld and then paid over the summer. A statement accompanying that legislation recites that the amounts paid during the summer to employees who select that so-called "twelve-month plan" are deemed to have been earned as of the preceding June 30th. Introductory Statement, Assembly, No. 3679, *L.* 1979, *c.* 495. Outland, however, had not elected to be paid on the twelve-month plan. Outland therefore, by the end of the school year, had received 100% of the salary that the Board had agreed to pay her for that school year.

Outland's disability payments ceased after June 30, 1994. Although the Board did not dispute that disability payments would

have to resume at the beginning of the next academic year had Outland not been able to return to work by then, the Board refused to pay benefits to Outland over the summer recess, which ran from July 1 to August 31, 1994.

Outland filed a motion for temporary disability benefits in the Division of Workers' Compensation. She argued that the Board's payment of benefits equal to seventy percent of her weekly wage, which the Board had been paying pursuant to *N.J.S.A.* 34:15–12, should continue over the summer. She has not claimed, neither in the Division nor on appeal, that the Board was obligated by *N.J.S.A.* 18A:30–2.1 to pay the remaining thirty percent of her weekly salary during the summer recess.

While her matter was pending, the Appellate Division rendered its *Porter* decision. 281 *N.J.Super.* 13, 656 *A.*2d 443. Donald Porter was a teacher in Elizabeth who sustained a back injury while teaching. The Division of Workers' Compensation (the Division), among other rulings, ordered the Elizabeth Board of Education to pay Porter temporary disability benefits over the summer. On the school board's appeal, the Appellate Division affirmed the Division's holding on that issue. In interpreting *N.J.S.A.* 18A:30–2.1, the court focused on the Legislature's use of the term "calendar year." The court was "convinced that the Legislature, in utilizing the term 'calendar year' rather than 'school year' as the applicable time period, [intended] that school board employees be fully compensated for the time during which they are temporarily disabled without regard to whether that disability falls within the school year or the summer recess." 281 *N.J.Super.* at 21, 656 *A.*2d 443. The effect of the Appellate Division's decision was that teachers who had elected to be paid on the regular ten-month plan, who were temporarily disabled as a result of injuries suffered in the course of their employment, and whose disabilities lasted beyond the end of the school year would continue to receive temporary disability benefits under workers' compensation during the summer recess regardless of whether those teachers had planned to take summer jobs.

The compensation judge followed *Porter* and awarded Outland $3,675.71 in workers' compensation temporary disability benefits, an amount equal to 70% of her weekly salary multiplied by the number of weeks in the summer recess. The Board appealed. The Appellate Division reversed the award of the compensation judge. Disagreeing with the *Porter* decision, the *Outland* panel concluded that neither *N.J.S.A.* 18A:30–2.1 nor the Workers' Compensation Act was intended to provide injured workers with a means to recover wages that were not lost. 295 *N.J.Super.* at 397, 685 *A.*2d 68. Because there was no evidence that Outland had "lost" any wages over the summer, and because during the summer she was not "absent from [her] post of duty" as a teacher, the Appellate Division held that neither of the relevant statutes entitled her to disability payments over the summer. *Id.* at 398, 685 *A.*2d 68.

## II

We agree with so much of the Appellate Division's *Outland* decision that holds that the sick leave provisions of the education laws do not serve to amend the workers' compensation laws to create an entitlement to temporary disability benefits that would not otherwise exist under those laws. The parties have briefed the issue of whether we should read *N.J.S.A.* 18A:30–2.1 *in pari materia* with *N.J.S.A.* 34:15–12. We need not resolve that issue because the portion of *N.J.S.A.* 18A:30–2.1 that Outland would have us read into *N.J.S.A.* 34:15–12 does not carry the meaning Outland would like it to carry. The Legislature used the term "calendar year" in *N.J.S.A.* 18A:30–2.1 in order to establish the maximum duration of a school board's obligation to pay the full salary of an injured employee, not to establish any sort of affirmative obligation of an employer to pay benefits during the summer or any other point in a year when the teacher would not have earned a salary for teaching. *See Williams v. Board of Educ. of Deptford Township,* 192 *N.J.Super.* 31, 40–41, 469 *A.*2d 58 (App. Div.1983) (construing "calendar year" language in *N.J.S.A.*

18A:30–2.1 to require compensation for covered absences within 365 days of date of injury). It did not use the term "calendar year" to confer on injured workers a double recovery or windfall. Nor would the drafters of the Workers' Compensation Act have favored a double recovery. *See N.J.S.A.* 34:15–40 (entitling providers of workers' compensation benefits to recover amounts paid to injured employee by third parties, up to the amount of workers' compensation benefits paid); *Midland Ins. Co. v. Colatrella,* 102 *N.J.* 612, 618, 510 *A.*2d 30 (1986) (affirming application of workers' compensation lien to proceeds recovered by injured worker from his uninsured motorist policy, when worker had previously recovered workers' compensation benefits).

Correctly understood, the significance of the "calendar year" language for a teacher whose inability to work began toward the end of a school year and lasted through the summer is that the payments due under *N.J.S.A.* 18A:30–2.1, after ceasing during the summer months when the teacher would not have taught, would have to resume in the fall when the teacher would otherwise have returned to the classroom. The payments would then continue until the first anniversary of the commencement of the teacher's disability, provided the disability lasted that long.

Understood in the context of *N.J.S.A.* 18A:30–2.1, the workers' compensation temporary disability benefits payable under *N.J.S.A.* 34:15–12, serve, during the school year, as a credit toward the disability income due to the occupationally injured teacher under the sick leave statute. During the summer recess period the workers' compensation temporary disability benefits serve to replace the wages lost from other employment because of the occupational injury. No payments are due under the sick leave act during the summer because the injured teacher is not absent from her "post of duty" as a teacher. The Workers' Compensation Act, on the other hand, is not tied so specifically to a particular occupation. The injured teacher should be entitled to workers' compensation temporary disability benefits during the

summer if she can prove that she is unable to resume whatever type of work she otherwise would have had.

Therefore, the payments that Outland seeks do not constitute a double recovery or windfall for her but rather a replacement of income from work actually lost, whether covered by a benefit program or not. The Board argues that entitlement under the Workers' Compensation Act is based on the contract in force at the time of the injury, and that because Outland received all of the money that was due to her under her contract, any further payments would overcompensate her. The Board's argument is premised on the thesis that the contract of hire (the teaching contract) determines whether temporary disability benefits are paid. It reasons that workers' compensation benefits to an employee are based on the "wages" of an employee, a term that is defined under N.J.S.A. 34:15–37 as the money rate of pay "under the employment contract." There being no money due over the summer under the teaching contract, the Board reasons that no benefits for disability are due. The flaw in the argument is that if temporary benefits were payable only during the time that the contract of hire were to have been in existence, a seasonal worker, such as a farm laborer who suffered an injury near the end of a harvest season, would receive no temporary disability benefits after the season was over. The contract of hire would have expired.

■ We agree with petitioner that there is no such restriction in the Workers' Compensation Act. Temporary disability benefits are payable until the employee is "able to resume work," N.J.S.A. 34:15–12 and –38, not just until the contract for hire was to have expired. Under the Board's reasoning, a callous employer could avoid all responsibility for temporary disability benefits to an at-will employee by asserting that it had, before the accident, planned to terminate the employee. There being no money due under the employment contract (it would have been terminated), there would be no temporary disability benefits due to the injured worker. We surmise that in that circumstance our dissenting

members might fall short of following the logic of the Board. However, their understanding is not sufficiently stirred to perceive in the case of Mona Outland the failed logic of the Board.

Our dissenting colleagues cite numerous cases establishing that an injured employee may collect workers' compensation temporary disability benefits only if that employee has lost wages. *See post* at 546–47, 713 *A*.2d at 468–69. That proposition is not in dispute. What is in dispute is whether an injured employee may collect workers' compensation temporary disability benefits for wages the claimant would have earned from another job. None of the cases cited by the dissent limit a claimant to compensation for wages lost from the job on which the injury took place. In contrast, there is well-reasoned support for an injured employee's entitlement to compensation for wages the employee would have earned from off-season employment. *See Powell v. Industrial Comm'n*, 7 *Ariz.App.* 518, 441 *P*.2d 553, 556 (1968) (calculating teacher's average monthly wage, for workers' compensation purposes, by dividing the teacher's annual salary by nine, as opposed to twelve months, and reasoning that during the months not covered by the contract with the school board, "[the teacher's] time was her own"); *Dominquez v. Industrial Comm'n*, 22 *Ariz.App.* 578, 529 *P*.2d 732, 740 (1974) (setting aside the calculation of "average monthly wage" of a seasonal fruit picker where hearing officer multiplied the worker's monthly wage of $389.63 by potential duration of employment of five months, then dividing that product by twelve; and noting that a hearing officer should consider whether claimant's "prior work record indicated that he had continually been employed for twelve months of the year in different seasonal jobs," in which case the award could be tailored to the "employee's particular situation" to reflect more accurately the claimant's earning capacity); 33 *U.S.C.A.* § 910 (Longshore and Harbor Workers' Compensation Act) (setting forth that, for workers' compensation purposes, the "annual average earnings" of an injured longshoreman, who "shall not have worked in such employment during substantially the whole of the year immediately preceding the injury," shall equal "three hundred times the

average daily wage or salary for a six-day worker and two hundred and sixty times the average daily wage or salary for a five-day worker, which he shall have earned in such employment during the days when so employed").

■ Unlike our dissenting colleagues, we cannot ignore the reality that teachers often supplement their income during the summer. Many teachers base mortgage commitments on the expectation of a supplemental summer income. For others, summer jobs are essential in building a child's college fund. The two-month recess places teachers in a special category. Mona Outland is not claiming benefits based on a lost capacity to work an extra few hours at the end of an eight-hour work day. Nor is she claiming compensation for a lost opportunity to pick up some extra cash during a paid week's vacation. She, like most teachers, has an entire season off, during which neither work nor income is due under the employment contract. She is a seasonal employee, like a laborer hired to harvest crops or wrap Christmas gifts. In fact, Dean Larson, in his workers' compensation treatise, uses a teacher as his prime example of a seasonal employee. 2 Arthur Larson, *The Law of Workmen's Compensation* § 60.22(a) (1989). The Legislature could never have intended that an employee's seasonal status would fortuitously shield an employer from its obligation to compensate for the loss of such a significant opportunity to earn income.

■ A teacher's ability to choose to be paid on a twelve-month basis, pursuant to *N.J.S.A.* 18A:29-3, does not make the teacher's job any less seasonal. We noted above that salaries paid over the summer to school board employees who choose to be paid on the twelve-month plan are deemed to have been earned as of the preceding June 30th. The selection of this twelve-month plan is nothing more than a decision to defer the receipt of income previously earned. A teacher on the twelve-month plan injured during the school year would be entitled to both workers' compensation temporary disability benefits and the additional benefits afforded by the sick leave act. Those benefits would be "earned"

as of June 30th but deferred into the summer in accordance with the teacher's choice. (We illustrate these cash flows in the Appendix to this opinion.) Had the teacher planned to work during the off-season, and had the injury prevented her from doing so, the teacher would be entitled to receive additional workers' compensation temporary disability benefits during the summer. Benefits received per pay period during the summer would be greater than the pay checks of an uninjured employee who selected the twelve-month plan, but that difference is a meaningless consequence of the original decision to defer income earned during the school year.

■ In short, we would agree with the Board that Outland would not be entitled to temporary disability benefits if Outland planned to relax all summer, perhaps vacationing at the Jersey shore. In that case the benefits would represent a windfall. But the payment of temporary disability benefits would not create a windfall if Outland planned to work during the summer recess and had her injury prevented her from following through with that plan. On the contrary, to deny payments based on lost summer employment would frustrate the purpose of the workers' compensation system, which is "to compensate for the inroad upon the *full-time* earning capacity of the victim of industrial mishap." *Maver v. Dwelling Managers Co.*, 34 *N.J.* 440, 443, 170 *A.2d* 35 (1961) (Weintraub, C.J.) (emphasis added).

■ We therefore cannot accept the Board's contention that the sum of the salary Outland received prior to her injury and her temporary disability benefits may not exceed the amount she was due to earn as income over the entire school year. To accept the Board's contention would make second-class citizens of teachers in contrast to other seasonal employees. Although a seasonal employee's benefits must be based on the hourly, daily or weekly wage provided "under the contract of hiring in force at the time of the accident," *N.J.S.A.* 34:15–37, a seasonal employee's aggregate recovery of workers' compensation temporary disability benefits has no necessary relationship to the aggregate amount due to him

or her under the contract in force at the time of the injury. We repeat that the purpose of the Workers' Compensation Act is "to compensate [the worker] for the inroad upon the full-time earning capacity of the victim of industrial mishap." *Maver, supra,* 34 *N.J.* at 443, 170 *A.*2d 35. Most teachers work twelve months out of the year, not just ten. A teacher such as Mona Outland should be compensated for the loss of two months of earning capacity when the loss is caused by an assault by a student during the school year.

On the other hand, as our dissenting members are at great pains to note, the Workers' Compensation Act is not intended to compensate for wages that are not lost. The record does not disclose that Outland actually lost income during the summer. The lack of evidence on that point likely arose because the parties concluded that the *Porter* opinion held that teachers are statutorily entitled to summertime benefits under workers' compensation by virtue of their employment as teachers. The proper disposition of this case is therefore to remand so that Outland may have the opportunity to prove that her injuries caused her to lose income she could otherwise have earned from summer employment. *See Knight v. Cohen,* 32 *N.J.* 497, 499–500, 161 *A.*2d 473 (1960).

The parties have not addressed whether the Board may be entitled to an offsetting credit under the principles set forth in *Young v. Western Electric Co.,* 96 *N.J.* 220, 475 *A.*2d 544 (1984). The Court therefore has not considered that issue.

The judgment of the Appellate Division is reversed. The matter is remanded to the Division of Workers' Compensation to determine whether or not petitioner suffered any loss of wages from summer employment.

## APPENDIX

To illustrate the point, we shall depict the total gross earning capacity between April 1 and September 1 of a hypothetical teacher/summer worker. Assume for illustration that the teacher earns

$36,000 for teaching
$ 6,000 for summer work, for example, as a camp counselor,
    beach club manager, or pari-mutuel clerk

For a teacher on a ten–month pay plan:

## *APPENDIX*—Continued

| April | May | June | July/August | |
|---|---|---|---|---|
| $3600 | $3600 | $3600 | $6000 | =$16,800 |

For a teacher on a twelve–month pay plan:

| April | May | June | July/August | |
|---|---|---|---|---|
| $3000 | $3000 | $3000 | Deferred 2/12 of $3600 salary from April, May, June = $1,800[1] summer job = 6,000 | =$16,800 |

The Board's theory of replacing the teacher/worker's earning capacity between April and September is:

For a teacher on a ten-month pay plan:

| | April | May | June | July/August | |
|---|---|---|---|---|---|
| T/D[2] | $1936 | $1936 | $1936 | | |
| SLA[3] | $1664 | $1664 | $1664 | —0— for lost summer job | =$10,800 |
| | $3600 | $3600 | $3600 | | |

For a teacher on a twelve-month pay plan:

| | April | May | June | July/August | |
|---|---|---|---|---|---|
| T/D | $1936 | $1936 | $1936 | $1800 deferred[1] + | |
| SLA | $1664 | $1664 | $1664 | —0— for lost summer | |
| 2/12 | (600) | (600) | (600) | job | =$10,800 |
| deferred | | | | | |
| | $3000 | $3000 | $3000 | | |

Outland's theory of replacing lost earning capacity between April and September is:

For a teacher on a ten-month pay plan:

| | April | May | June | July/August | |
|---|---|---|---|---|---|
| T/D | $1936 | $1936 | $1936 | 8 wks of T/D | |
| SLA | $1664 | $1664 | $1664 | @ $484 per week or $3872[4] | =$14,672 |

---

[1] Of course, the teacher is also entitled to the 2/12 per month deferred between September and April.

[2] T/D = temporary disability in workers' compensation calculated at 70% wages up to maximum of $516, here 70% of $692 per week or $484 per week. In calculating the temporary disability benefit, we have used rough estimates and not attempted to make exact calculations of what the temporary disability awards would be in compensation.

[3] SLA = statutory benefit under sick leave act.

[4] Note that the temporary disability payments paid over the summer have been calculated at 70% of the wages called for by the teacher's contract with the employer. That would have been the "contract in force at the time of the injury." *N.J.S.A.* 34:15–37.

*APPENDIX*—Continued

| $3600 | $3600 | $3600 | | (still less than the wages lost, <u>no double recovery</u>) |
|---|---|---|---|---|

For a teacher on a twelve-month pay plan:

|  | April | May | June | July/August | |
|---|---|---|---|---|---|
| T/D | $1936 | $1936 | $1936 | Deferred income $1800 | |
| SLA | $1664 | $1664 | $1664 | 8 wks. of T/D $3872 4 | =$14,672 |
| deferred | (600) | (600) | (600) | | (again still less than the wages lost, <u>no double recovery</u>) |
| | $3000 | $3000 | $3000 | | |

HANDLER, J., dissenting.

The Court holds that a temporarily disabled teacher employed under a ten-month contract by the board of education may seek to recover from her employer temporary disability benefits covering the summer recess period, even though she was already completely compensated for her lost wages as a teacher. The result reached by the Court goes well beyond the provisions of the Workers' Compensation Act. I, therefore, dissent.

I

Under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to – 142 (the Act), an employee is entitled to compensation from the employer when the employee suffers "personal injury ... by accident arising out of and in the course of [ ] employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause." *N.J.S.A.* 34:15–1. The Act is social legislation with its primary purpose being "to provide an employee, when he suffers a work-connected injury, with a speedy and efficient remedy for loss of wages." *Cureton v. Joma Plumbing & Heating Co.*, 38 *N.J.* 326, 331, 184 *A.*2d 644 (1962).

The heart of the statute is the schedule of payments provided in *N.J.S.A.* 34:15–12. "For injury producing temporary disability, [the schedule of compensation is] 70% of the worker's weekly wages received at the time of the injury.... This compensation *shall be paid during the period of such disability,* not, however, beyond 400 weeks." *N.J.S.A.* 34:15–12a (emphasis added).

"Wages" are defined as "the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident.*" *N.J.S.A.* 34:15–37 (emphasis added). For temporary disability, these benefits are · to be calculated according to the provisions of *N.J.S.A.* 34:15–38, which states as follows:

> To calculate the number of weeks and fraction thereof that compensation is payable for temporary disability, determine the number of calendar days of disability from and including as a full day the day that the employee is first unable to continue at work by reason of the accident, including also Saturdays, Sundays and holidays, up to the first working day that the employee is able to resume work and continue permanently thereat.... The resulting whole number and sevenths will be the required period for which compensation is payable on account of temporary disability.
>
> [*Ibid.*]

In sum, the scheme for awarding temporary disability benefits requires that, first, as the result of an accident arising out of and in the course of employment, the employee must be temporarily disabled. *N.J.S.A.* 34:15–1; *N.J.S.A.* 34:15–12a. Next, if the employee is temporarily disabled, the employee is entitled to receive 70% of his or her wages as determined by looking at the employment contract at the time of the accident. *N.J.S.A.* 34:15–12a; *N.J.S.A.* 34:15–37. Finally, once the rate of compensation is determined, the amount of time the employee receives benefits is determined by when the employee returns to work. *N.J.S.A.* 34:15–38.

The threshold inquiry is whether the worker is temporarily disabled. *N.J.S.A.* 34:15–12a ("[C]ompensation shall be paid during the period of such disability."). The Act itself does not define "temporary disability." It is a contextual concept that relates the disability to the work and to the wages from the work. Courts attempting to articulate a definition for the term have recognized the functional relationship between disability and .its necessary effect on work and wages. In *Calabria v. Liberty Mutual Insurance Co.*, 4 *N.J.* 64, 71 *A.2d* 550 (1950), the Court stated in *dictum* that an employee cannot make a claim for temporary disability without being absent from work. *Id.* at 68, 71 *A.2d* 550 ("Calabria

made no claim for temporary disability. He could not because there had been no absence from work."). Such a basic rule, that an employee is not temporarily disabled if the employee is not absent from work and thus losing wages from that work, has been repeated numerous times by the courts of New Jersey. *See, e.g., Young v. Western Elec. Co.,* 96 *N.J.* 220, 226, 475 *A.2d* 544 (1984) ("temporary disability compensation ... payments are in lieu of those wages"); *Ort v. Taylor–Wharton Co.,* 47 *N.J.* 198, 208, 219 *A.2d* 866 (1966) ("[T]emporary disability represents a partial substitute for loss of current wages."); *Gorski v. Town of Kearny,* 236 *N.J.Super.* 213, 215, 565 *A.2d* 415 (App.Div.1989) ("Temporary disability benefits are paid in lieu of salary."); *Electronic Assocs., Inc. v. Heisinger,* 111 *N.J.Super.* 15, 20, 266 *A.2d* 601 (App.Div. 1970) ("Petitioner here is entitled to no award for temporary disability because she suffered no current wage loss as a result of an ailment attributable to her occupation."); *General Motors Acceptance Corp. v. Falcone,* 130 *N.J.Super.* 517, 520, 327 *A.2d* 699 (Cty.Ct.1974) ("The award is 'in lieu of wages.'") (quoting *Williams v. Newark Dept. of Welfare,* 43 *N.J.Super.* 473, 477, 129 *A.2d* 56 (Cty.Ct.1957)); *Worthington v. Plainfield Bd. of Educ.,* 23 *N.J. Misc.* 14, 19, 40 *A.2d* 9 (Dept. Labor 1944) ("[P]etitioner is not entitled to any temporary disability [benefits], there being no lost compensable time."); *Krov v. Centaur Const. Co.,* 18 *N.J. Misc.* 593, 596, 15 *A.2d* 619 (Dept. Labor 1940) ("The petitioner having lost no time from his work, is not entitled to compensation for temporary disability."). The major treatise on Workers' Compensation is in accord with this proposition. *See* 1C Arthur Larson, *Larson's Workmen's Compensation Law* § 57.12(b) at 10–19 (1993) ("Temporary total ... and temporary partial occasion relatively little controversy, since they are ordinarily established by direct evidence of actual wage loss.")

There should be no escape in this case from the straightforward rule that a worker is not temporarily disabled if the worker is not absent from work and thus not suffering wage loss attributable to that work. Outland suffered her injury in late April and, as a result of the injury, missed work until June 30, the end of the

school year and her contract period; during that time of absence from work, she suffered a wage loss attributable to that work. Hence, her temporary disability occurred during and was limited by that period, and she appropriately was awarded temporary disability benefits based on those definitional elements. For the summer months, however, Outland was not absent from work nor did she suffer a loss in wages because there was no work from which she was absent. Even considering possible outside employment, Outland did not suffer a loss of wages under the Act because *N.J.S.A.* 34:15-37's definition of wages looks only to the employment contract in force at the time of the accident. Thus, Outland was not "temporarily disabled," within the meaning of the Act, during the summer months. Not being temporarily disabled, Outland was not entitled to any benefits for the summer months.

Even if the Court were properly reading the statute, the result the Court reaches should be avoided. *See State v. Provenzano,* 34 *N.J.* 318, 322, 169 *A.*2d 135 (1961) (ruling that in any endeavor involving statutory construction, an important maxim to consider is that "a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition."). The Court's conclusion that Outland can recover benefits if she lost wages over the summer attributable to some other kind of employment will lead to anomalous results in the context of the statute and legislative scheme.

The purpose of the Act is to provide a portion of the employee's salary when the employee suffers a wage loss as a result of a work-related injury. "Compensation was to be a benefit earned. It was to be a matter of right and not of grace or related in any way to the dole." *Moore v. Magor Car Corp.,* 27 *N.J.* 82, 85, 141 *A.*2d 536 (1958). To provide summer benefits for full-time teachers who are on a ten-month contract and who are not employed under their contract over the summer is an extraordinary and untoward result in light of the Act's purpose—it asks the Division of Workers' Compensation to order payments for the teacher beyond her actual earned salary.

The result the Court reaches is even less tenable when the sick leave chapter of the Education Title is taken into consideration. Under *N.J.S.A.* 18A:30–2.1, the school board employee is entitled to be paid the full salary or wages for the employee's period of absence. Thus, a teacher injured during the school year receives his or her entire salary from a combination of temporary disability benefits and supplemental benefits under the Education Title. A continuing award of benefits over the summer would place the school board in the position of paying employees more than their completed full-time contract. Such results are surely unwarranted. *Cf.* 2 Larson, *supra,* § 60.22(a) at 10–715 ("If a school teacher, for example, is paid $2,000 a month for nine months of the year, there is no reason to calculate earning capacity on the unrealistic basis of $2,000 a month for twelve months."). Other jurisdictions that have faced comparable situations under similar workers' compensation laws have also concluded that awarding benefits over the summer months would be irrational. *See, e.g., School Dist. No. 401 v. Minturn,* 83 *Wash.App.* 1, 920 *P.*2d 601 (1996); *Herbst's Case,* 416 *Mass.* 648, 624 *N.E.*2d 564 (1993).

The appendix included in the Court's opinion attempts to illustrate that a teacher receiving worker's compensation benefits over the summer would not be receiving a "double recovery." *Ante* at 544–45, 713 *A.*2d at 466–67. In the Court's example, a teacher receiving benefits over the summer would receive $14,672 whereas a non-injured teacher, again in the Court's example, would receive $16,800. The problem with that example is that the Court is assuming that the appropriate comparison is to the total combined earnings the teacher would receive between April and August. That comparison is misleading. The school board did not bargain to pay the teacher the money in the months of July and August that the Court includes in its example. Thus, the correct comparison is between the $14,672 the teacher would receive between April and August if she were injured and receiving benefits over the summer and the $10,800 she would receive from the school board between April and August had she not been injured. Obviously, the amount she would receive including workers compensa-

tion over the summer months is in excess of the amount in her contract with the school board. (That is true regardless of whether she is paid on the ten-month or twelve-month plan.) The majority's inclusion of the summer wages in its illustration is merely an attempt to mask this fact.

Highlighting the anomalous nature of the Court's conclusion is that under its reasoning if Outland proves she lost any wages over the summer, *N.J.S.A.* 34:15–37 would require that Outland be paid temporary disability benefits over the summer at the rate of $415 per week because that is seventy percent of her wages at the time of her injury. If Outland's hypothetical summer job was a minimum wage job paying her roughly $200 per week, the Act as interpreted by the Court would nonetheless require the school board to pay Outland based on her higher school-year salary. The alternative would be reading into the Act a provision that Outland's temporary disability benefits would change to a different rate over the summer; however, reading that provision into the Act would be a bold form of judicial legislation. No such provision exists, and the anomaly of paying Outland more over the summer than she would otherwise have made at her summer job highlights how problematic the majority's reasoning is.

## II

The Court advances its own notions of public policy as a basis for its conclusion that Outland is entitled to temporary disability benefits over the summer. The Court claims that there is no restriction in the Act that should limit recovery for seasonal workers. The Court expresses its concern over seasonal workers by stating that "[t]he flaw in the [school board's] argument is that if temporary benefits were payable only during the time that the contract of hire were to have been in existence, a seasonal worker, such as a farm laborer who suffered an injury near the end of a harvest season, would receive no temporary disability benefits after the season was over." *Ante* at 539, 713 *A.*2d 464. In taking the prospect of seasonal employment into consideration, the Court

ventures beyond the facts and genuine policy implications of this case.[5] This concern over seasonal employment is well-intentioned. It has always been recognized and acknowledged by this Court and the Legislature. *E.g., Vasquez v. Glassboro Service Assoc., Inc.,* 83 *N.J.* 86, 415 *A.*2d 1156 (1980) (protecting the housing interests of migrant farm workers); *State v. Shack,* 58 *N.J.* 297, 277 *A.*2d 369 (1971) (allowing non-profit organization onto private property to assist migrant farm workers); *N.J.S.A.* 34:9A–1 to –41 (Seasonal Farm Labor Act). It should not serve, however, to warp a clear statute or to advance a social policy not adopted by the Legislature.

The root of the Court's concern over seasonal workers is in *N.J.S.A.* 34:15–38's provision for calculating benefits. The Court reasons that the calculation required includes the summer months because the provision requires payment over the entire period until the employee is "able to resume work." Such a reading converts *N.J.S.A.* 34:15–38 from a provision that merely describes how to calculate benefits to a provision granting the substantive right to receive benefits. By its own terms, though, *N.J.S.A.* 34:15–38 describes the process of calculating benefits only if there is a "temporary disability." Over the summer, Outland was not "temporarily disabled" because she was not losing any wages she would have otherwise received from her employment at the time of injury. Thus, she was not entitled to benefits over the summer.

What is really behind the Court's misreading of *N.J.S.A.* 34:15–38 is its own policy determinations and not the actual provisions of the Act. That is evident in the majority's use of the hypothetical at-will employee whose employer claims it was going to lay off the employee. *See ante* at 539–40, 713 *A.*2d at 464. The majority allows its sympathy for that employee to distort the statute in Outland's case—one that does not involve an at-will employee nor

5 It is worth noting that in the over eighty-five years of the Act we have not had any reported cases involving controversies over the status of seasonal workers under the Act.

an indefinite period of employment. Furthermore, in the majority's hypothetical, if the employer lays off the employee only because the employee sought worker's compensation benefits, the employer would be unlawfully firing the employee in retaliation for seeking those benefits. Firing an employee under those circumstances is clearly forbidden by the Act. *N.J.S.A.* 34:15–39.1; *Lally v. Copygraphics,* 85 *N.J.* 668, 428 *A.*2d 1317 (1981).

The crux of the Court's holding is its mistaken reading into the Act a provision in favor of seasonal employees. Were we to have a provision in our Workers Compensation Act providing for a calculation of wages based on the employee's annual earnings (as does Arizona, which is why the resolution of the two Arizona cases cited by the majority, *see ante* at 540, 713 *A.*2d at 465, differs from the conclusion we reach), we might agree with the majority's conclusion. However, New Jersey's Workers Compensation Act does not annualize wages in that context. Rather, it squarely answers the question at hand in its provision that wages are "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." *N.J.S.A.* 34:15–37. Because of that difference, neither Arizona law nor the Longshore and Harbor Workers' Compensation Act, *see ante* at 540, 713 *A.*2d at 465, is relevant in determining how to compensate a teacher injured in New Jersey.

The Court also cites as a reason for its conclusion that "to deny payments based on lost summer employment would frustrate the purpose of the workers' compensation system." *Ante* at 542, 713 *A.*2d at 466. The Court finds the purpose of the system in *Maver v. Dwelling Managers Co.,* 34 *N.J.* 440, 170 *A.*2d 35 (1961). According to the Court, that case shows that an employee should be compensated for his "full-time" earning capacity. But the Court ignores the holding of *Maver,* which is that unless the "employee's full time is jointly engaged by a number of employers," 34 *N.J.* at 444, 170 *A.*2d 35, the Act "singles out the employment of injury and requires a finding of the weekly wage with reference to it alone," *id.* at 446, 170 *A.*2d 35; *see also*

*Tomarchio v. Township of Greenwich*, 75 *N.J.* 62, 78, 379 *A.*2d 848 (1977) (reaffirming *Maver* even though "[t]his view is apparently unique to New Jersey"). The Court's selective citation to the case ignores the part of *Maver* relevant to Outland's situation—that discussing temporary benefits as they relate to an injured worker with multiple employers. That section clearly limits the rate of temporary disability benefits to compensating for the loss of wages of the employment at the time of injury and not other employments. The Court's opinion here does not address at all this holding in *Maver*.

The Court finally notes that accepting the school board's reasoning would make teachers "second-class citizens" under the Act. *Ante* at 542, 713 *A.*2d at 466. Because teachers are covered only by the general provision in *N.J.S.A.* 34:15–37 that wages are determined by the "contract of hiring in force at the time of the accident," the more specific provisions in *N.J.S.A.* 34:15–37 for hourly, daily, or weekly employees are inapplicable to Outland's case. Using those provisions to conclude that "Outland *should* be compensated for the loss of two months of earning capacity," *ante* at 543, 713 *A.*2d at 466 (emphasis added), is an open act of judicial re-writing of a statute.

## III

The Court's opinion in this case opens a Pandora's box of policy issues. It embraces the worthwhile goal of providing all seasonal employees the benefits designed to overcome the economic losses attributable to temporary disability. It does so, however, oblivious to the Legislature's stronger prerogatives and greater understanding in respect of whether and how seasonal employees should be protected. It is for the Legislature to decide what constitutes seasonal employment, the significance of the source of wages, the appropriate rates of payment, the accommodation of dual and successive employments, and the implications of full-time employment that is paid on a partial-year basis. The entitlement of teachers as seasonal employees is a difficult and complex subject

with consequences for public education that should not be resolved cavalierly by the judiciary.

One can hardly assume the Legislature will believe that the Court in this opinion is only explaining and confirming an existing legislative plan. Each year, New Jersey spends roughly 57% of its school budget on salaries and benefits. Nick Chiles, *A Lesson in School Spending, Newark Star Ledger,* Mar. 23, 1998, at 1. The Court betrays fiscal indifference when it compels an increase in those expenditures based on misreadings of clear statutes and adventurous forays into public policy regarding what is right for hypothetical average seasonal employees, who dramatically differ from your prototypical teacher. The Legislature may well believe that teachers are not to be treated as other seasonal employees and that their interests are generally well-protected and secured. Especially in light of the ongoing school funding controversy, we should be extremely wary of ordering the schools to spend more money to compensate teachers for summer job loss when the Legislature has not so mandated. Whether it is sound public policy is not for us to say.

I would, therefore, affirm the decision of the Appellate Division and let stand the ruling that Outland is not entitled to temporary disability benefits over the summer months.

Chief Justice PORITZ and Justice GARIBALDI join in this opinion.

*For reversal and remandment*—Justices POLLOCK, O'HERN, STEIN and COLEMAN—4.

*For affirmance*—Chief Justice PORITZ, and Justices HANDLER and GARIBALDI—3.